# The Trustees of the University of Alabama v. Keller, Executrix, &c.

1. Money *voluntarily* paid under ignorance of the law, cannot be recovered back in an action for money had and received.
2. A judgment until reversed, is as between the parties to it, and upon the matters determined as a plea, or bar, or as evidence conclusive.

Error to the circuit court of Tuskaloosa county.

THIS was an action of assumpsit brought in the court below, by the testator of the defendant in error, to recover back a sum of money paid under the following circumstances:

The testator of the defendant in error was a purchaser from the University of certain lands under the act of the Legislature of 1822; and on the 1st Monday of September, 1828, confessed a judgment in favor of the University for one hundred and ninety-eight and fifteen hundredths dollars. On the 15th February, 1830, the plaintiffs in error, recovered two judgments against the testator of the defendant by suit commenced in the ordinary mode, one for ninety one dollars, and the other for one hundred and twelve and twenty-sixth hundredths dollars. These facts appear by transcripts of the records of the judgments.

On the 2d day of August in the year 1830, the defendant's testator executed to the plaintiffs in error, a deed of trust by which he conveyed in trust certain property as collateral security for the payment in eight annual instalments of the judgments above recited, and one other for four hundred and five and ninety-one hundredths dollars, obtained by the University on the 15th August, 1827, and six bonds which are recited in the deed for the purchase of University lands, made by defendant's testator to the plaintiffs in error, on which judgments had not been obtained. The deed recites that this was an indulgence

granted by the University at the instance of the defendants testators; that upon the failure of the defendants testator to pay either of the instalments, that executions might issue on the judgments aforesaid; and securing to the defendants testator the right to convert the purchase into a lease, on the payment of one half the purchase money and the interest due thereon according to the provisions of the law under which the purchase was made.

The original purchase from the University was in 1823, and the testator of the defendant in error retained possession of the lands until 1834, when he re-entered under the provisions of the act of 1834. The money sought to be recovered in this action, was paid in discharge of the judgments recited in the deed of trust.

Upon this testimony the defendants in the court below by their counsel, moved the court to instruct the jury.

1. That if the jury believed the plaintiff did not pay the bonds given for the lands, within three months after the same became due and payable, but paid tee money subsequently, with a full knowledge of the facts, then plaintiffs could not recover the amount back.

2. That if the jury believe the money sought to be recovered in this action was paid under coercion of the judgments introduced in testimony then the plaintiffs could not recover.

3. That if they believed the trustees of the University, did not commence suit on the aforesaid bond, within three months after they became due, and the plaintiffs testator did not set up the forfeitture of the contract, as a defence to the suits on the bonds, or otherwise, show his intention to abandon the contract, then the contract of purchase continued, and the plaintiff could not recover back the amount of money which he had paid.

4. That if the jury believed the deed of trust was given to satisfy the judgments before mentioned, and the money was paid under that deed of trust, then the plaintiff could not recover back the money thus paid.

5. That the act of 1834 authorizing a re-sale of the University land, which had been forfeited could have no influence, in deter-

mining the right of the plaintiff to recover in this action. These instructions the court refused, and the defendant excepted.

The matters of law arising out of the bill of exceptions, are now assigned for error.

Mr. CAMPBELL for plaintiff in error, cited 17th Massachusetts Rep. 394; 10th Sergeant & Lowber, 79; 23d English Common Law Rep. 407; 7th Greenleaf's Rep. 44; 7th Term Rep. 269; 1 Esp. Rep. 279; 3d Bosanquet & Puller, 520.

Mr. PECK, contra, cited 1st Story's Equity 135, and the cases there cited; 3d Peere Williams, 316; 1st Sim. & Stewt. 555; 1 Term Rep. 285.

ORMOND, J.—The right to recover in this case is resisted by the plaintiff in error, on the ground that money paid in pursuance to, or in virtue of legal process, cannot be recovered back, so long as the proceeding under which it was paid, remain in force.

No principle of law is better settled, than that a judgment until reversed, is between the parties to it, and upon the matter determined, as a plea or bar or as evidence, conclusive. This is necessary to the repose of society; there must be an end to litigation, and it is not easy to conceive the beneficial results which flow from it, or the injury which arise from its relaxation.

In a proper case for the application, courts of justice will not permit the rule to be called in question by any supposed hardship, which can exist in any particular case; but inflexibly adhere to it. In the case of Moses v. Macfarlan, Burrow's Rep. 1005, Lord Mansfield permitted it to be questioned; but his example has not been followed, and that case has been repeatedly overruled, and never considered as law.

The rule has been carried much farther, than here stated. In a very recent case, it was held by the court of common pleas, that where money was paid after legal process sued out recover it, the party, knowing for what cause the action was brought, and there being no fraud, it could not be recovered back, (see Hamlet and others v. Richardson, 9 Bingham, 644; and also,

Loring v. Mansfield, 17 Mass. Rep. 394; Morton v. Chandler, 7 Greenleaf 44; Marriott v. Hampton, 7 Term, 267; Brown v. McKinally, 1 Espinasse 279.) The same doctrine was held by this court in the case of Jones v. Watkins, 1 Stewart Rep. 80, and indeed if any principle can be considered as the settled law of this court, not open to question, cavil, or doubt, it must be this.

These positions are not directly assailed, and indeed are admitted to be true; but it is insisted by the learned counsel for the defendants in error, that money paid by compulsion of legal process, may under peculiar circumstances be recovered back; as where ignorance of law is combined with other circumstances which made it inequitable that the party thus recovering the money, should be allowed to retain it: and to support his position, he relies on the cases collated by Mr. Justice Story in his commentaries, 1 vol. 129 to 153.

It is certainly true, as stated by that distinguished jurist, that some of the old decisions of the English Chancellors, cannot be satisfactorily reconciled with the maxim that ignorance of law will not excuse; but we do not understand that he doubts what the law really is at the present day, both in England and the United States. He thus sums up the authorities on this point, at page 151.

"We have thus gone over the principal cases, which are supposed to contain contradiction to, or exceptions to the general rule, that ignorance of the law, with a full knowledge of the facts, furnishes no ground to rescind agreements, or to set aside solemn acts of the parties. Without undertaking to assert that there are none of those cases which are inconsistent with the rule, it may be affirmed, that the real exceptions to it are few, and generally stand upon some very urgent pressure of circumstances. The rule prevails in England, in all cases of compromises of doubtful, and perhaps doubted rights; and especially, in all cases of family arrangements. It is relaxed, in cases where there is a total ignorance of title, founded in the mistake of a plain, and settled principle of law; and in cases of imposition,

misrepresentation, undue influence, misplaced confidence, and surprise. In America the general rule has been recognized, as founded in sound wisdom and policy, and fit to be upheld with a steady confidence. And hitherto the exceptions to it (if any) will be found, not to rest upon the mere foundation of a naked mistake of law, however plain and settled the principle may he; nor upon mere ignorance of title, founded on such mistake.

"It is matter of regret, that in the present state of the law, it is not practicable to present in any more definite form, the doctrine respecting mistakes of law; or to clear the subject from the obscurities and uncertainties which still surround it. It may, however, be added, that where a judgment is fairly obtained at law, upon a contract, and afterwards upon more solemn consideration of the subject, the point of law upon which the cause was adjudged, is otherwise decided, no relief will be granted in equity against the judgment, upon the ground of mistake of the law; for that would be to open perpetual sources of litigation." [See also Hunt v. Rousmaniere, 1 Peter's 1; Shotwell v. Murray, 1 Johnson's Ch. 512; Lyon v. Richmond, 2 Johnson's Ch. 51; Lewis v. Barker, 6 Johnson's Ch. 168] in which all the cases are collated, and the rule laid down with great clearness. So also, in this court, in the case already referred to in 1 Stewart, this court held, that money paid under ignorance of law could not be recovered back. The question in that case was presented under most imposing circumstances, and well calculated, if any thing could have that effect, to induce a departure from the rule; as many families had been reduced from wealth to indigence, by the misapprehension entertained by the whole community, of the true construction of the law, authorizing any amount of interest to be received, which the parties stipulated for in writing. We have considered the operation of the rule in courts of equity; at law there has been but little doubt, if any, entertained on the subject. In Bilbie v. Lunly, 2 East, 469, Lord Ellenborough held, that money paid by one, with full knowledge of the circumstances, or having the means of knowledge, could not be recovered back, because such payment had been made in ignor-

ance of the law, and asked the counsel if any case could be found to the contrary, to which no answer was given.

As the money sought to be recovered back in this case, was paid on judgments confessed, or regularly obtained with knowledge of the facts, but ignorant of the law, as afterwards settled by this court, in the case of the Trustees of the University v. Winston, 5 Stewart & Porter 17, it is fully established by all the cases cited, and by the result of the English and American authorities as collected by Judge Story, that the money could not be recovered back, even in a court of equity. It would not be necessary to add any thing further, but as the learned counsel for the defendants in error, inveighed in strong terms, against the Trustees of the University, for retaining the money thus paid, it is but shere justice to them, as the agents of the public, to state the case correctly.

The defendant in error became one of the purchasers of a portion of the University lands in 1823, on the terms prescribed by law. One fourth part paid down, one eighth part in one year thereafter, and one eighth part in two years, with interest at six per cent. per annum, and the residue of the purchase money, in eight years from the sale with like interest; with the privilege, at the expiration of the term of credit, and the payment of one half the purchase money, to convert the sale into a perpetual lease, paying interest for ever on the sum paid. There was also a clause, that in the event the money was not punctually paid, the land should be forfeited, unless the Trustees, within three months thereafter, commenced suit; in which event, the forfeiture was suspended, until a return of *nulla bona,* or *non est inventus.*

After a forfeiture had accrued by the terms of the law, the defendant in error, still retaining possession of the land, the Trustees commenced suits and obtained the judgments, the proceeds of which are now sought to be recovered back. This court having in June, 1833, at the instance of one of the purchasers, determined, that after a forfeiture had accrued under the law, it could not be waived by the consent of either, or both parties,—

the legislature, in January, 1834, passed an act, the title of which is, "for the relief of the purchasers of the University lands."

The act appoints commissioners to value the lands thus forfeited, and which were still in the possession of the original purchasers, and gives them the right of pre-emption in the purchase of the land at their valuation; by paying one fourth part of the purchase money down, and the residue in one, two, and three years; and in assessing the value of the lands, the commissioners were required not to take into consideration the value of the improvements. The act, in addition thereto, gave to the purchasers, the benefit of the original contract, so far as to enable them to take a perpetual lease if they desired.

We need not recur to our knowledge of the history of this law for the fact, that it was passed at the earnest entreaty of the purchasers of the University lands. Every line from the title to the last word, shows that the State acted with the utmost liberality; whilst the commissioners were forbidden to permit the improvements made on the land to enhance its value, full scope was given for diminishing the price down to the *minimum* fixed by law, by the injury done to the land by cultivation for more than ten years, and by the destruction of the forest. Yet it is this act, passed at the instance of the original purchasers and by virtue of which the testator of the defendants in error repurchased the land, that is now relied on as authorizing this recovery, on the ground, that as by the act the Legislature recognized and affirmed the forfeiture, it was a species of robbery to retain the money paid after such forfeiture had accrued.

If instead of the case being presented as it now is, of money *voluntarily* paid on judgments, which by lapse of time are irreversible, and as to those which were confessed could never have been reversed, there was no legal obstacle in the way to a recovery, and the question was simply whether in equity and good conscience this money could be retained, there could be no doubt of the result. The possession of the lands of the University for eight years after the forfeiture, the deterioration of the soil and waste of the timber, for which the trustees could main-

tain no action, or at least instituted none and asserted no claim, would have justified them in *foro conscientiæ*, in retaining the small amount paid after the forfeiture, which was indeed no compensation for the injury, and was both paid and received in ignorance of the law as afterwards settled. It might be added, that this ignorance of the law operated much more to the prejudice of the University than of the purchasers of the lands, and that the former was always willing to comply with the *original contract*, whilst the latter insisted on the forfeiture created by the statute.

It results from what has been stated, that the defendant in error cannot maintain this action, and the court erred in not instructing the jury to that effect, on the motion of the counsel for the defendants below.

Let the judgment be reversed and the cause be remanded, for further proceedings.