McDADE et al., Adm'rs, vs. MEAD, use &c.

1. To render a demand available as a set-off, the defendant must be entitled to a subsisting legal right of action on it, acquired before the commencement of the suit.

2. The endorsement of a note by the payee to G., with the understanding that if G. can use it as a set-off to a demand held against him by M., he is to pay the amount of it, otherwise it is to be returned to the payee, does not confer on G. such a property in the note, as will enable him to use it as a set-off against M.'s demand.

3. Parol evidence is inadmissible to prove the sheriff's return on an execution, unless the absence of the higher evidence is first accounted for.

ERROR to the Circuit Court of Montgomery. Tried before the Hon. Thos. A. Walker.

THIS was an action of assumpsit, brought by the defendant in error, for the use of Jeremiah Walker, surviving partner of John Walker, deceased, against the plaintiffs in error as administrators of Isham Gwinn, deceased, to recover the amount of a note for $80, made by said Gwinn in his life-time in favor of the defendant in error. The case was tried on the pleas of non-assumpsit, payment, and set-off. By the bill of exceptions it appears that there was evidence of a conversation had between the intestate and one of the Walkers, whilst the note was held by Mead, the payee, in which the intestate requested Walker "to pay or take up" the note, whenever Mead would receive Alabama money for it. and promised that he, the intestate,

"would pay him, or pay the note." The remaining facts of the case are sufficiently stated in the opinion. The court charged the jury that the note attempted to be set-off against the plaintiff's demand was not a legal and valid set-off in consequence of the agreement in respect thereto entered into between Gwinn, the intestate, and one of the payees of said note. The defendants then requested of the court certain charges, the substance of which was that if they believed that Jeremiah Walker, or he and his deceased partner, John Walker, *paid* the note sued on or *took it up* at the request of Gwinn, the plaintiff cannot recover in this action, although the payment was made with Walker's money, and not with Gwinn's? These charges the court gave to the jury, but added in explanation: "That they could look to all the proof and circumstances in the case, for the purpose of ascertaining whether the note was in fact paid for Gwinn, at his request, or taken up by Walker merely to get it out of the hands of Mead for the accommodation of Gwinn, so that he, Gwinn, might be enabled to pay the note to Walker in Alabama bank notes instead of paying specie to Mead—the jury may look to all the facts and circumstances in the case, and they may look and see, if Gwinn was going about after the request to Walker to take up the note, trying to get a set-off to the note, and if so, for what purpose was he doing it? And if the jury believe from all the proof that it was the intention of Gwinn to pay Walker the note, and so promised, if he would take it up, then they must find for the plaintiff."

To the ruling of the court in the admission of the evidence as noticed in the opinion, and to the affirmative and explanatory charges given, the defendants excepted, and now assign them as error.

SAFFOLD, for the plaintiffs in error.

BELSER & HARRIS, for the defendant:

1. The evidence of the witness objected to was properly allowed to go before the jury.—Planters' & Merch. Bank of Mobile v. Willis & Co., 5 Ala. 770; Johnson v. Cunningham, 1 ib. 249; Hogan & Co. v. Reynolds, 8 ib. 60. There is a difference between knowledge of insolvency, and report of it.

2. The insolvency of Mead is proved, independent of the

returns of *nulla bona* on the executions not produced, and the court will not reverse in such a case.—Easley v. Dye & Dye, 14 Ala. 158; Herbert v. Hanrick, 16 ib. 581.

3. The set-off, under the circumstances, was properly rejected.—Adams & Taylor, 2 Ala. 675 ; Crawford v. Ex'r of Turrenton, 7 Port. 110; Bell v. Horton, 1 Ala. 413 ; Smith v. Taylor, 9 ib. 633; Franklin v. McGuire, 10 ib. 557.

4. There is sufficient evidence, disclosed by the bill of exceptions, to authorise the instructions given by the court to the jury, and which are assigned as error in the record.

5. The charges given by the court, at the request of the plaintiff in error in the court below, and also the explanation to the jury accompanying them, correctly laid down the law; and there was sufficient evidence to base the explanation on, and to authorise the jury to find as they did.

6. If Walker bought the note at the request of Gwinn, then Gwinn could not, in good conscience, procure a set-off against it.

CHILTON, J.—This was an action of assumpsit brought by Joseph H. Mead, who sued for the use of Jeremiah Walker, against the administrators of Isham Gwinn, deceased, to recover upon a note made by said Gwinn for the sum of $80, dated 28th Nov. 1842, and due one day thereafter. The defendants plead *non assumpsit*, payment, and set-off.

The main question presented for revision is, whether a note executed by said Mead to J. P. and A. J. Saffold, was, under the circumstances disclosed by the record, a valid set-off.

This action was commenced the 5th day of June 1848. The note sought to be set-off was acquired the 6th Nov. 1843, as follows: It was endorsed to Gwinn by J. P. Saffold, who, at the time of such endorsement, executed to Gwinn the following instrument in writing : " I have this day transfered to Mr. Isham Gwinn a note made by Joseph H. Mead for sixty-eight dollars, payable to J. P. & A. J. Saffold, or order, dated Feb. 12th, 1843, and due on the first day of January next after date. If the said Isham Gwinn can succeed in bringing said note in as an off-set against a note now held by said Mead against him, then he is to pay me the amount of a note he has this day given me for sixty-eight dollars, dated this day and due one day after date. If the note made by said Mead cannot be brought in as

an off-set against the one he holds against the said Gwinn, then the note on Mead is to be returned to me, and I am to return the note which he has given me;" dated Nov. 6th, 1843, and signed by J. P. Saffold.

On the 20th April 1846, Gwinn paid to Saffold the money on the note above mentioned, and thereupon took from him another written instrument in these words: "Know all men by these presents, that I bind myself to defend a note given by Isham Gwinn to Joseph H. Mead for about $81, dated some time in Nov. 1842; and in the event that judgment goes against said Isham Gwinn, I obligate myself to permit judgment to go against me in favor of said Gwinn for the sum of sixty-eight dollars, and to pay the cost of the said suit at law, and interest on sixty-eight dollars from the 6th Nov. 1843"—dated "21st April 1846," and signed by J. P. Saffold. It appears that at the time of this negotiation Mead was in very moderate circumstances, if not insolvent. One witness was allowed to testify, against the objection of the defendants below, that he knew Mead was insolvent from the fact that he had claims against him, upon which executions had been returned " no property found."

The court, under the above state of facts, excluded the note made by Mead to the Messrs. Saffold from the jury, holding it no valid set-off. The agreement given by Mr. Saffold, and which was cotemporaneous with his endorsement of the note to Gwinn, must be considered as forming a part of the endorsement. Thus considered, can the note be allowed as a valid set-off?

In Adams v. Taylor, 2 Ala. 675, under the plea of set-off, the defendant offered a bill, accepted by the plaintiffs, which it was proved he received and was to account for only in the event that he could make it available to him in a settlement with the plaintiffs, and if not, it was to be returned. The Circuit Court charged the jury that if they were satisfied with the genuineness of the acceptance, and that the defendant held the same under an agreement, prior to the commencement of the suit, they must allow the bill as a set-off. This court held the charge erroneous, and say that "a demand, to be good as an off-set, must be such an one as a suit could be maintained on; for an off-set is in the nature of a cross-action. " The defendant," it is added, " had no property in the bill which he was allowed to set-off

against the plaintiff's demand; but a permission to use it, if he could make it available in a settlement with the plaintiffs, in which event only was he to account for it with the owner. This was not such a property in the bill as would constitute a set-off against the plaintiff's demand." , The judgment allowing it was consequently reversed. The case does not show whether the bill had been endorsed or not.

In Crawford v. The Ex'rs of Simonton, 7 Port. 110, it was held that a plea of set-off, that plaintiff's testator was a co-surety with the defendant for a third person, and that on the default of the principal, the defendant executed his own note in discharge of the liability of the sureties, and that the testator executed his writing under seal, agreeing to pay his proportion either to the defendant or the original creditor,—not alleging that the substituted note was paid,—held to be insufficient on demurrer.

These decisions must be regarded as settling the law that a party, to avail himself of a set-off, must have a subsisting legal right of action upon the demand attempted to be set-off, acquired before the commencement of the action against him.—See also, French v. Gainer, 7 Port. 549; Bell v. Horton, 1 Ala. 412; Holmes v. Bullock, 4 ib. 228; Bunnell v. McGehee, 9 ib. 433; Smith v. Taylor, 9 ib. 633; Crayton v. Clarke, 11 ib. 790.

Let us examine into the character of the title, which Gwinn had in the note payable to the Messrs. Saffold. And here we would remark, we must look at the substance of the whole contract to ascertain its legal effect. The counsel likens the transaction to a transfer of a note by endorsement, and guaranteeing its payment, should it not be collected out of the maker. But is this the legal effect of the first agreement, made in 1843? We are clear in the opinion that it is not. The arrangement simplified may be thus stated:—Gwinn owed Mead and Mead owed Saffold. The latter (Mead) being, to say the least of it, of doubtful solvency, exchanges his note on Mead with Gwinn for the note of the latter, for the purpose of enabling Gwinn to have it allowed as a set-off against Mead, but if such set-off should not be allowed, then the exchange amounted to nothing,— Gwinn's note was to be returned to him, and the note of Saffold back to him. It was then a conditional exchange. It was to be absolute only in the event that it was allowed as a set-off, when this future event happened, then the arrangement was

consummated, but until then the real property in the note was in the payees, not in Gwinn. It is very clear to our mind, that the claim does not come within the purview and meaning of our statute of set-off, and that it falls within the principle of exclusion settled by Adams v. Taylor, *supra.* The subsequent agreement, made after Gwinn paid his note to Mr. Saffold, that the latter would defend him against the note of Mead, and in the event of his failure to succeed, to pay the cost and confess judgment for the amount so paid by Gwinn, with lawful interest, does not in the slightest degree affect the principle upon which the set-off is excluded. It can make no difference in principle whether the note or the money is to be returned to Gwinn. He still stands in the predicament of having purchased, not the note itself, but the chance of set-off, for which, if successful, he is to pay, but if unsuccessful, he is to be placed in *statu quo.* We might strengthen our conclusion by refering to some reasons founded in the policy of the law as sustaining it, but it is unnecessary.

As to the testimony respecting the insolvency of Mead, we cannot see upon what principle the court permitted the witness for the plaintiff to give parol evidence of the executions and returns of *nulla bona* upon them, without accounting for their loss or destruction in some way. There was no attempt to take the proof offered without the influence of the general rule requiring the production of the best evidence, which was the papers themselves, or certified transcripts, if they had become matters of record. The court erred, therefore, in the admission of this proof. We are not fully satisfied that no injury resulted to the defendant below from the admission of this improper evidence.

As to the qualification given by the court to the charges asked on the part of the defendant below, it seems to have been couched in rather unguarded language, but it is correct, so far as it asserts a legal proposition.

For the error in admitting secondary evidence as to the executions and returns upon them, the judgment is reversed and the cause remanded.