## LYON vs. ODOM.

[ACTION ON BOND OF INDEMNITY.]

1. *Presumption in favor of judgment.*—Where the regularity of the appointment of an administrator *de bonis non* is collaterally attacked, the order itself not showing why it is made, nor how, why or when the administrator in chief was removed; while neither the transcript nor the pleadings purport to set out all the facts connected with the appointment, or to contain an exemplification of the entire record of the probate court, the appellate court will presume, in favor of the ruling of the primary court, that a sufficient reason to justify the action of the probate court exists of record in that court.

2. *Validity of decree against administrator, in favor of "heirs when known."*—A decree of the probate court, rendered on the final settlement of an administrator's accounts; reciting that "it appears said administrator has received and is chargeable with" a specified sum, "and is entitled to credits amounting to" another specified sum, "leaving a balance of $232 in his hands, to be distributed among the heirs of said estate hereafter, when known;" and then ordering "that the preceding statement stand as the judgment and decree of this court, and, after said distribution, that said estate be held and esteemed finally closed,"—has not the requisites of a judgment, but is sufficient to authorize a decree against the administrator, on a proper proceeding, without further investigation of the accounts, unless he shows errors or mistakes in the account as stated.

3. *Ex-parte statement of administrator's accounts.*—Under the provisions of the Code, (§§ 1878–79,) authorizing the *ex-parte* statement of an account against an administrator " from the materials in the office of the probate judge," the perfection of publication is equivalent to personal service; and a former decree of the court, ascertaining a balance in his hands, but not in favor of any particular person by name, is a sufficient predicate for a final decree against him.

4. *Conclusiveness of decree of probate court.*—A final decree of the probate court, rendered on publication against an administrator, cannot be collaterally impeached, on account of irregularities which would reverse it on error, when the record shows that the court had jurisdiction of the parties and subject-matter.

APPEAL from the Circuit Court of Monroe.

Tried before the Hon. THOMAS A. WALKER.

THIS action was brought by Jesse T. Odom, against John Lyon and Garrett Longmire, and was founded on a penal bond, which was conditioned that Lyon should indemnify Odom " against all damages and costs " that

Lyon v. Odom.

might be incurred by him, as the surety of one Leroy A. Kidd, on his official bond as the administrator of Joseph K. Rush, deceased; and which was executed in pursuance of a decree of the chancery court of Monroe, in a cause then pending therein between Odom, Lyon and Kidd, by which it was ordered, that a judgment at law against Odom, in favor of Kidd, and transferred by him to Lyon, should be perpetually enjoined, unless such bond was executed. The breach assigned in the complaint was, that plaintiff, as the surety of said Kidd, had been compelled to pay, under execution from the probate court, the amount of a decree rendered by said court on the 19th February, 1855, in favor of James P. Rush, as administrator *de bonis non* of said Joseph K. Rush, deceased, against said Leroy A. Kidd, the administrator in chief, on which decree an execution had been previously issued against said Kidd, and returned "no property found;" and that the defendants refused to repay this amount.

The defendants craved oyer of the condition of the bond, and pleaded, 1st, *nul tiel record;* and, 2dly, a special plea which was, in substance, as follows: That at the May term of said probate court, 1850, said Kidd made a final settlement of his administration on said estate, and a decree was then rendered against him by said court, "in favor of the heirs of said estate when known," for $232 32; that letters of administration on said estate were afterwards granted to R. C. Torrey, as administrator *de bonis non;* that afterwards, to-wit, in 1854, Torrey's letters were revoked by said court, and letters of administration *de bonis non* were granted to said James P. Rush; that at the January term of said probate court, 1855, said Rush filed his petition in said court, praying that the decree formerly rendered against Kidd, as above stated, might be rendered in his favor, as such administrator *de bonis non;* that at a special term of said probate court, held in February, 1855, a decree was rendered in favor of said Rush, as such administrator, against said Kidd, for $232 32, with interest from the 6th May, 1850; that an execution was afterwards issued on this decree, and returned "no property found; "all which proceedings of said orphans'

and probate court will more fully appear, by reference to the record thereof herewith filed."—"And said defendants aver, that said decree of said orphans' court, against said Kidd, and in favor of the heirs of said Joseph K. Rush, remains unreversed and unsatisfied; that neither said Kidd, nor said plaintiff and John J. Roach, his sureties, were made parties to the proceedings of said probate court set out in plaintiff's complaint, nor had they any legal notice thereof; that said decree in favor of Rush was without authority, and void, and not binding on plaintiff, nor was he obliged by law to pay the same," &c.

The plaintiff demurred to this special plea, 1st, for duplicity; 2d, because it states conclusions of law, instead of facts; and, 3d, because it is not a sufficient answer to the complaint. The court sustained this demurrer, and decided the issue joined on the plea of *nul tiel record* in favor of the plaintiff.

There is an agreement of counsel copied into the transcript by the clerk, in these words: "We agree, that the within copy of the proceedings of said orphans' and probate court may be inserted in the transcript in this case, if the same should be taken to the supreme court; and that it, together with the decree of said court dated 6th May, 1850, a copy of which is marked 'A'; and a copy of the chancellor's decree between said Odom and Lyon, may form a part of the pleadings, as fully as if inserted therein, and whatever else the parties may deem necessary of any record connected with the case."

The transcript from the records of said probate court, as set out under this agreement, contains the following proceedings:

1. The decree of May 6th, 1850, against said Kidd, the material portion of which is as follows: "It appears that said administrator has received and is chargeable with the sum of $1318 89, and that he is entitled to credits in the sum of $1086 57, leaving a balance in his hands of $232 32, to be distributed among the heirs of said estate hereafter, when known. Ordered, that the preceding statement stand as the judgment and decree of said court, and, after said distribution, that said estate be held and

esteemed as finally closed.   It is further ordered, that the
account current, as stated, be recorded and placed on file."

2.  A decretal order of the April term, 1854, revoking
the letters of administration previously granted to R. C.
Torrey, and granting letters to James P. Rush.

3.  The petition of said Rush, which was filed on the
8th January, 1855, reciting the rendition of the former
decree against Kidd, alleging that the same had not been
paid or satisfied, and praying that a decree might be ren-
dered in his favor, as administrator *de bonis non*, for the
amount of said decree, with interest thereon; and the
order of the court, made at the January term, 1855,
appointing the third Monday in February then next for
the hearing of said petition, and directing "that notice
thereof be given, by publication in the *Claiborne Southerner*,
for three successive weeks, so that all persons concerned
may, if they think proper, appear and contest the same."

4.  A decree, rendered at a special term held on the
29th February, 1855, in these words: "This day came
James P. Rush, administrator *de bonis non* of Joseph K.
Rush, deceased, by attorney; (the same having been
appointed for the hearing of his petition, praying that a
decree may be rendered in his favor, as administrator as
aforesaid, against L. A. Kidd, former administrator of
said estate, for the amount of a certain decree heretofore
rendered against said Kidd as such administrator, but not
in favor of any particular person;) and the notice required
by a previous order of court having been given; and no
person appearing to contest said petition; and the court
being satisfied that the facts therein set forth are true:
It is, therefore, ordered and decreed, that James P. Rush,
administrator *de bonis non* on the estate of Joseph K.
Rush, deceased, do have and recover of and from said
Leroy A. Kidd, former administrator of said estate, the
amount of said decree, to-wit, the sum of $232 32, with
interest from the rendition thereof, to-wit, the 6th May,
1850; for which execution may issue."

5.  A *fi. fa.* on this decree, purporting to be issued on
the 26th *February* (?) 1855, received by the sheriff on the
7th May, and returned, on the 11th June, "no property

found;" an order of court, made at the August term next following, reciting the issue and return of this execution, and directing the issue of an execution against the administrator and his sureties; and the execution thereon issued against said sureties, with their principal, under which plaintiff paid the money which he seeks to recover in this suit.

The rulings of the court on the pleadings are now assigned as error.

D. C. ANDERSON, for the appellant.

S. J. CUMMING, contra.

STONE, J.—It is one of the admitted facts in this record, that Odom paid the money which he seeks to recover out of Lyon, and for which he obtained a judgment in the court below. Whether he paid it without authority, or under legal coercion, is the question on which the result of this case must depend.

It is here argued for appellant, that the appointment of James P. Rush, as administrator de bonis non of the estate of Joseph K. Rush, deceased, was and is void, because the record does not show the jurisdictional facts. There is nothing in this record which enables us to determine this question in favor of the appellant. The plea admits the removal of Kidd, the administrator in chief, and the appointment of Rush. True, the record from the probate court of Monroe does not inform us how, why, or when Kidd was removed; nor why Torrey was removed, and Rush appointed, as second administrator de bonis non. The agreement of counsel, taking the place of a bill of exceptions, does not purport to exemplify the whole record, or to set out all the facts. Neither can we discover that this was a question in the court below. Under these circumstances, we feel it our duty, to indulge every reasonable presumption in favor of the ruling in the primary court; and to presume that a good and sufficient reason exists, of record in that court, to justify its action. See School Commissioners v. Godwin, at last term, and authorities cited.

The pleadings, however, do raise the question of the validity of the decree in favor of James P. Rush, and against Leroy A. Kidd. That judgment was rendered on the petition of said James P. Rush, and without any personal service on Kidd, or his sureties. The record informs us that publication was made; and the court took jurisdiction of the case on the constructive service in that way perfected. Did the law authorize notice to be given by publication, in the case made by the petition in this record?

In the absence of our statutes on the subject, an administrator *de bonis non* has no authority to reduce to possession any assets of the estate, other than such as remained in *specie*, and unadministered by the administrator in chief. These assets were not in that condition.—Kelly v. Kelly, 9 Ala. 908; Ventris v. Smith, 10 Peters, 161; Nolly v. Wilkins, 11 Ala. 872. The statute "to regulate settlements in the orphans' court," approved February 4, 1846, enlarged the powers of the administrator *de bonis non*, and allowed a decree in his favor, for any balance found against the administrator in chief on his final settlement.—Pamph. Acts, p. 14. The Code (§§ 1876–7) provides for a like decree on the final settlement made by an administrator in chief.

It will be remembered that, in this case, the administrator in chief had so far settled his administration, as to show a balance in his hands, which the court directed should be paid to the heirs (distributees?) when known. This was not a decree. We think, on a proper proceeding, this decreed balance, if the administrator *de bonis non* or distributees so elected, might have been decreed against the administrator, without further investigation of the accounts, provided he did not show he was entitled to further credit or abatement.

If in this proceeding for the admitted balance, the administrator in chief had been served with personal notice of the filing and purposes of the petition, or if he had come in and made himself a party, no one would say that a judgment rendered on this state of facts would not

be upheld.—Code, § 1877. There was here neither personal notice, nor a waiver of it.

In this case, the regularity of the judgment of Rush v. Kidd, comes up collaterally; and unless the judgment is void, it will not be declared inoperative, because of any errors or irregularities that may be found in the record. If the court had jurisdiction of the subject-matter and the parties, no matter how informal the proceedings, they would authorize the payment of the money by Odom, and entitle him to recover in this action.—Parmer v. Ballard, 3 Stew. 326; Duncan v. Ware, 5 Stew. & Por. 119; Story's Conflict of Laws, §§ 545 to 550; authorities cited in Smith, administrator of Hunt, v. Ellison's Heirs, at the present term.

The Code (§ 1878) authorized the probate court to state an account against the administrator in chief, "from the materials in his office." Here the materials consisted of an admitted balance in his hands. True, no formal statement of the account was made out; and probably, on error, we would reverse the case. Proceedings, however, were set on foot, and the court took action on those proceedings. These proceedings plainly disclosed a purpose to charge the administrator in chief with that admitted balance, and that a decree for that amount would be moved for against him. It is probable that we need not look to the petition in sustaining this decree, assailed as it is collaterally. The administrator was regularly notified by publication, under section 1879 of the Code. Whether the account was stated before or after the publication, was perhaps an immaterial inquiry, when the record came up collaterally. If the account was not stated before publication, this irregularity would, on appeal, secure the reversal of the case.

However the question last considered would be determined, if the record disclosed no other proceedings, we are satisfied that, in this case, although greater formality might have been observed, the decree of the probate court of Monroe was not void; and consequently, Odom was authorized to pay the amount of the decree to the administrator *de bonis non.* Having paid it, a right of

action accrued to him on the bond of indemnity. Thus construed, the plea of defendant opposed no defense to the plaintiff's action, and the demurrer to it was properly sustained.—The State v. Richmond, 6 Foster, 232–243–4 ; Brown v. Webber, 6 Cush. 560.

The judgment of the circuit court is affirmed.