## ATKINS *vs.* KNIGHT.

[ACTION BY ENDORSEE AGAINST MAKER OF PROMISSORY NOTE.]

1. *Promissory note, action; endorsee against maker, what valid defense.*—In a suit by an endorsee against the maker of a promissory note, it is a valid defense that it was given in consideration of the notes and accounts of another person, and payable when they were collected, which had not been done, and that the plaintiff obtained it after maturity.

2. *Same, fraud of maker and payee, when no defense.*—The fraud of the maker and payee of a note in ante-dating it, for the purpose of practising a deceit on a third person, and making it appear an absolute promise to pay, when, in fact, its payment depended on the success of the deceit, can give no protection to the maker, nor aid to the endorsee after maturity, in a suit for its collection.

3. *Negotiable note, what required of purchaser after maturity.*—It is better to require one who would purchase a negotiable note after its maturity to ascertain whether it is a subsisting demand, than to subject the antecedent parties to the necessity of tracing to him a knowledge that it was not.

4. *Plea in bar, suggesting claimant; when subject to demurrer.*—A plea in bar which in substance merely suggests another claimant for the money sought to be recovered without a request for an interpleader, is subject to demurrer. Also, when the matter arose after the commencement of the suit, and is not pleaded *puis darrein continuance.*

APPEAL from Circuit Court of Butler.
Tried before Hon. P. O. HARPER.

This is an action by Knight, as transferee, against Atkins, as maker of a promissory note.

The defense was *non assumpsit*, failure and want of consideration, "with leave to give in evidence any thing that

might be good matter of defense under any plea not required to be sworn to," and a special plea alleging in substance that Yeldell, the payee of the note, being insolvent and in contemplation of bankruptcy, with a view of preferring a creditor, and in fraud of the bankrupt act, within less than four months before his adjudication of bankruptcy, transferred said note, after its maturity, to one Donald in payment of an antecedent debt; said Donald knowing the insolvency and contemplated bankruptcy of Yeldell; that plaintiff received said note from Donald after maturity. Oath to this plea was waived. A demurrer to the special plea was sustained by the court, to which the defendant excepted.

The plaintiff then read the note, which was as follows:

"$400. One day after date, I promise to pay J. M. Yeldell or bearer four hundred dollars for value received for Dr. G. B. Herbert's notes and accounts.

JAMES O. ATKINS.

Monterey, Dec. 1, 1866."

and proved that by successive transfers it was his property.

The defendants' testimony tended to prove that there was a simulated contract between him and Yeldell, by which he, for the benefit of Yeldell, was to appear to have purchased absolutely some claims against Dr. Herbert, who was insolvent, and to use them as a set-off against a note of the said defendant made to Dr. Herbert, and transferred to one Dunklin, who shortly after this sued defendant. If defendant succeeded in so using the said claims, he was to pay Yeldell the amount of the note then made, but he was not to pay the note if he failed to so use the claims of Dr. Herbert.

This agreement was evidenced by a writing executed contemporaneously with the note; and both the note and agreement were ante-dated, so as the better to enable the defendant to use the claims as a set-off.

Yeldell, in violation of his agreement, put the note in circulation after its maturity by endorsing it to Donald, from whom the plaintiff obtained it, without actual knowledge of the above facts. The defendant failed in his at-

tempt to use the claims of Dr. Herbert, as a set-off to Dunklin's suit, and they have not been made available. There was no other consideration for the note.

Upon this evidence the court, among other things, charged the jury that "if defendant and Yeldell agreed to make, and did make, the note sued on in this case for the purpose and with the intention that defendant should by means thereof defeat a recovery by Dunklin on the note that had been transferred by Herbert to Dunklin; then the transaction was fraudulent, and if such note was transferred to plaintiff, even after it was due, and plaintiff had no notice of the fraud, and had paid value received for it, then the plaintiff was entitled to recover." To this charge the defendant excepted, and asked the court to give the following:

"1st. If the jury believe that defendant and Yeldell, the payee, executed the note for the sole purpose of defrauding another party, then the transaction being tainted with fraud no person who took the note from Yeldell after it was due could recover on the note.

2d. If the note was founded in a fraudulent transaction, it is void, and does not become good if traded to another after it is due.

3d. If the jury believe it was the understanding and agreement of the parties, Yeldell and Atkins, at the time the note was made, that the note was not to be paid unless Atkins collected certain notes and accounts from Dr. Herbert, then Atkins is not liable to pay the note unless he has collected said notes and accounts, or unless he has in some way violated his contract in relation to the collection of said accounts and notes.

4th. Though Atkins and Yeldell may have intended to perpetrate a fraud on Dunklin, yet if their attempt did not work any actual injury to Dunklin, then their attempt would not be such a fraudulent transaction as would prevent Atkins from defending this suit by showing a failure of consideration.

5th. No man who buys a promissory note after it is due,

can claim to be an innocent holder so as to preclude any defense that the maker might put in against the payee.

6th. If Yeldell traded the note sued on after it was due, Atkins has the right to make any defense to the note sued on by Knight, that he could have made if sued by Yeldell, the payee."

The court refused to give each charge asked by defendant, and to each refusal defendant excepted, and here assigns as error—

1st. Sustaining the demurrer to special plea.

2d. Charge given by the court.

3d. Refusal to give the charges asked.

HERBERT & BUELL, for appellant.—The charge of the court, as applied to the bill of exceptions, involves two questions:

1. Could Yeldell, the payee, have recovered of Atkins? The following authorities answer the question in the negative: Chitty on Bills, p. 92; *Armstrong v. Toler*, 11 Wheat. 259; *Ayer v. Hutchins*, 4 Mass. 370; *Hinds v. Chamberlain*, 6 N. H. 225; Pars. on Cont., 4th ed., vol. 2, note 4, p. 280; *Nellis v. Clark*, 20 Wend. 24; *Smith v. Hubbs*, 1 Fairfield, (Maine,) 71; *Hoover v. Pierce*, 27 Miss. 13; *Walker v. Gregory*, 36 Ala. 184; *Goudy v. Gebhart*, 1 Ohio St. Rep. 363.

*Smith v. Hubbs*, *Hoover v. Pierce*, and *Nellis v. Clark*, *supra*, are all well considered opinions, holding that where a note is given with the intention of defrauding third parties, the holder may nevertheless prove the fraud as a defense, because a note is an *executory* contract, not to be enforced if tainted with fraud. Such proof was heard in *Walker v. Gregory*, *supra*. There the note on its face showed a good consideration, but R. W. WALKER, J., delivering the opinion of the court, says: " If the *proof showed* that the real consideration of the contract was future cohabitation, then it was to be read as though it recited that consideration."

2. Can Knight, who took the note more than twelve months after maturity, claim to be an innocent purchaser

without notice ? The following authorities show that he took it subject to all defenses the maker might have set up against the payee: Story on Prom. Notes, § 190; Chitty on Bills, 244, 115; *Sebring v. Van Wyck*, 1 Johns. Cas. 330; *Odiorne v. Howard*, 10 N. H. 343; *Lansing v. Lansing*, 8 Johns. 454; *Ayer v. Hutchins*, 4 Mass. 370.

The established rule is, that he who takes paper past due, is charged with notice of all he might have learned by making proper inquiry. GOLDTHWAITE, J., says, in *Robertson v. Breedlove*, 7 Port. 543, such paper is "subject to all objections in respect of want of consideration or illegality, and all other objections," &c.

Examining the cases relied on by appellee, we find *Lickman v. Lapsley*, 13 Sgt. & Rawle, 224. No transfer had given pretended validity to the note, and it is held that one party can not set up his fraud against the other. In other words, the court, because it hated fraud, enforced a fraudulent executory contract, thereby making itself the instrument of fraud. We have no fear this court will do that. The case is unsupported by authority, and totally at war with principle.

*Administrator of Wilson v. Greene*, 25 Vt. 456, is the case of an executed fraudulent contract, which the court refused to disturb.

*Thomas v. Page & Page*, 3 McLean, 369: The report of the case does not show *when* the note was transferred, and we must presume the transfer was before maturity. In fact, the very next case in the same volume, 3 McLean, 371, shows what would have been the decision in *Thomas v. Page*, had the note been transferred after maturity. There they say a person who took over-due paper "should have made inquiry," &c.

*Decatur Bank v. Spence*, 9 Ala. 800; *Roberts v. Adams*, 8 Port. 300; *Herbert v. Huie*, 1 Ala.; *Huntingdon v. Branch Bank*, 3 Ala. 188: These are all cases in which one party entrusts another with the filling up of a note signed in blank. In none of them is it made to appear that the paper was negotiated after it became due. Hence, the doce e of estoppel properly applies. The party who has

put it in the power of another to mislead a third person, is estopped to set up that the note was filled up with a larger amount than he authorized. But if the notes had been traded after maturity, and the persons taking them thereby put on inquiry, we apprehend the decisions would have been different. There is, however, this other difference : the question in these cases was not one of consideration, which may generally be inquired into, but of amount agreed to be paid, as to which, generally, parol evidence is inadmissible to vary a written contract.

*Rhodes v. Starr*, 7 Ala. 346, that the contract for the sale of lands was executed, vendee having been put in possession and waived deed.

T. J. JUDGE, and T. H. WATTS, *contra.*—The demurrer to the special plea was properly sustained—1st, because this special plea amounted to nothing more than the general issue, or if it did, the same proof could have been given under the general issue, under the agreement shown in the judgment entry ; 2d, because the matters set forth in said special plea constituted no valid defense to the plaintiff's right of recovery. There was no averment in the plea that the assignee of Yeldell, or his creditors, claimed the note sued on as assets of Yeldell's bankrupt estate ; 3d, because all the material matters set forth in the plea occurred *subsequent* to the commencement of this suit; 4th, as this plea is based on facts occurring after the commencement of the action, it could, under no circumstances, have been held a good plea, unless pleaded as a plea *puis darrein continuance.*

3. The charge given was correct. To hold the reverse, would be to allow Atkins, the appellant, to take advantage of his own fraud and that of the payee of the note, concocted between them, against an innocent man, who paid value for the note without notice of their combination to defraud. Atkins, by making the note in concert with Yeldell, for the purpose of practising a fraud on a third party, put it in the power of Yeldell to transfer it to an innocent party and thus practice a fraud on him, if one of these

conspirators in fraud can now set up this fraud (not practiced on him,) in defense of this suit.

It matters not, in this view of the case, whether Knight became the holder of this note before or after maturity. Where two conspire to perpetrate a fraud on a third party, by one making a note payable to the other conspirator in fraud, and the note is then put off on a party without notice, paying value, neither of the conspirators in such a fraud can set up his own fraud and that of his co-conspirator to defeat the rights of the innocent victim of the fraud.

The principles of the following cases support this view : *Lickman v. Lapsley*, 13 Serg. & R. (Penn.) 224 ; *Administrator of Wilson v. Greene*, 25 Vt., especially on page 456 ; *Thomas v. Page & Page*, 3 McLean, 369.

This last case is almost precisely in point, and was decided by Judge McLean, of the United States supreme court. " The maxim that fraud vitiates every contract, is always applied *ad hominem*, that is, to the party on whom the fraud is committed," and does not apply to a case where two combine to perpetrate fraud on a third person' so as to permit one of the two participators in the fraud to set up the fraud of himself and co-conspirator, as between themselves, to defeat the innocent victim of their fraud in recovering his just rights when he was one of these conspirators in fraud.—See *Lickman v. Lapsley, supra*.

The general doctrine may be, that the defendant may set up against the assignee of a note the same defense he could against the payee ; but where persons mutually engage to defraud another, and the note intended to be the instrument of the fraud come into the hands of an innocent assignee, who pays value for it, the original fraud can not be set up as a defense against the assignee.—See *Thomas v. Page & Page, supra*. The facts of the present case are strikingly like those of the case referred to.

Where a party's own agent is authorized to fill up a . note in blank, and the agent puts in a larger sum than authorized, the maker is bound to pay to a holder for

value, and can not set up the fraud of the agent. These decisions rest on the ground that he who is most in fault must suffer.—9 Ala. 800; 8 Porter 300; 1 Ala. 18; 3 Ala. 188.

5. But under the facts disclosed in this bill of exceptions, Atkins and Yeldell, as to third parties ignorant of the understanding between them, must be regarded as the makers of this note. In *Murdock v. Carruthers*, 21 Ala. 785, it is held that a note made by one firm payable to another firm having a common member, is not a note until assigned, and the assignee is regarded as the payee. Why is this? It is because there was no contract completed until the assignment of the note ; one man being a member of each firm, destroyed the idea that there would be two parties to the contract until the note was traded to the assignee, who was the second party to the contract, and hence he was regarded as the payee, although on the face of the paper he was the assignee.

In this case, Atkins and Yeldell, both parties to the fraud, constituted one party, and Donald, the first assignee, constituted the second party to the contract. He had no notice of the secret understanding between Yeldell and Atkins ; he paid his money without notice, and must be protected if he had sued. Knight stands in his shoes. In this aspect of the case, the note was not due until one day after Donald became the owner of it. He, in fact, in this view of the contract, became the owner of the note before maturity.

6. When the consideration of a note is expressed specially on its face, parol evidence can not be introduced to show a different consideration, and that the contract has been, rescinded.—See *Newton v. Jackson*, 23 Ala. 355; *West v. Kelly*, 19 Ala. 353 ; *Evans v. Bell*, 20 Ala. 509 ; *Saunders v. Bacon*, 8 John. 485.

7. This note was an unconditional promise to pay, and the defendant can not set up a cotemporaneous agreement, whether verbal or written, to defeat a recovery against one who paid value for the note, without notice of such secret agreement.—See authorities cited in preceding point, and

also, *Gillett v. Ballou*, 29 Vermont, 298; see opinion of the court, and not merely the head note; *Jones v. Jeffries*, 17 Missouri, p. 578.

8. The authorities cited to show that a party who trades for over due paper takes it subject to equities between the original parties, have no application to such a case as this. In all such cases an innocent party is allowed to set up the fraud of payee imposed on him. No case can be found which holds that where both the maker and payee of a note combine to cheat somebody else, that the maker of a note can set up his and the payee's bond to defeat the assignee for value, whether the assignee became so before or after maturity of such paper.

B. F. SAFFOLD, J.—The defendant, Atkins, was at liberty to buy a set-off against his note to Dr. Herbert, but the purchase should have been absolute, not conditional. As he was to pay Yeldell only in case he made the claims against Herbert available, he had no such property in them as would entitle him to use them as a set-off.—*McDade v. Mead*, 18 Ala. 214. His fraud consisted in concealing the conditional character of the purchase, and in ante-dating the agreement, for the purpose of precluding Herbert's right to transfer or sue on his demand.

Assuming that Atkins' note was given with the understanding expressed in Yeldell's receipt, and that the consideration has not been realized, the latter could not recover on it. If the plaintiff, obtaining the note after its maturity, occupies a better position than the payee, it must be on account of some fraud from which he is likely to suffer, and against which he was not warned either actually or constructively.

The consideration of a promissory note may be inquired into, for the purpose of a defense to an action brought thereon, between any of the immediate or original parties to the contract. The rule applies to all cases where the party takes the note, even for value, after it is over due; for then he takes it subject to all the equities which properly attach to the particular note between the antecedent

parties. The test of such an equity is, could the payee, at the time he transferred the note, have maintained a suit upon it against the maker, if it had then been mature. Story on Prom. Notes, §§ 178, 190. A note in circulation after it is due, carries suspicion upon its face. It suggests inquiry, and places the purchaser in privity with his indorser, and subject to any defense available against him. *Sylvester v. Crapo*, 15 Pick. 92 ; *Burroughs v. Moss*, 10 Barn. & Cresw. 563. It is better to require one who would purchase a negotiable note after its maturity to ascertain whether it is a subsisting demand, than to subject the antecedent parties to the necessity of tracing to him a knowledge that it is not.

The question in this case is not whether the defendant's intended fraud shall shield him from liability, but whether, notwithstanding it, he shall be protected. Contracts in fraud of the rights and interests of third persons are void against them, but not necessarily always so between the parties or their privies, especially when not in *pari delicto*. For instance, if Atkins had purchased the claims upon Herbert absolutely, after the commencement of the suit against him by Dunklin, and ante-dated the contract of purchase in order to make them available as an offset, he could not defeat the suit of an innocent purchaser, though after maturity, on the note given for them, on the ground of the attendant fraud. In such a case there would be neither want nor failure of consideration, and the fraud would be such as the perpetrator would not be allowed to take advantage of.—*Abner v. Kingsland & Co.*, 10 Ala. 355 ; *Troughton v. Johnston*, 2 Hay, (N. C.) 328.

Our conclusion is that the charge given by the court was erroneous ; the first, second and fourth charges asked by the defendant were properly refused ; and that the third, fifth and sixth charges refused ought to have been given.

The plea to which the demurrer was sustained, was in substance merely the suggestion of another claimant of the money sought to be recovered, without a request for an interpleader. Besides, it was not pleaded *puis darrein continuance*, the matter alleged having occurred after the

commencement of the suit. The demurrer was well sustained.—*Agee v. Medlock*, 25 Ala. 281.

The judgment is reversed and the cause remanded.