# Bank of Mobile *v.* Mobile and Ohio Railroad Company.

*Bill in Equity to compel Railroad Corporation to issue Certificate of Stock.*

1. *Judgment inter partes; its effect.*—A judgment *inter partes*, not reversed and not successfully assailed for fraud or on some other ground, is conclusive against the parties thereto who are properly before the court,—against the defendant, that the amount adjudged is due, and against the plaintiff, that no more is due, on account of the contract or liability sued on.

2. *Judgment; cause of action merged therein.*—Where a compromise was made between the parties pending a suit brought against a municipal corporation by the holder of bonds issued by such corporation, for the purpose of enforcing the collection of the bonds held by him, by which an amount of recovery less than the face of the bonds, and time of payment were agreed on, and afterwards a judgment was entered in the cause pursuant to the compromise, and carrying its stipulations into execution,—the effect of such compromise and the judgment thereon, was to merge the municipal corporation's liability on the bonds in the judgment, thereby destroying the bonds as a cause of action, and leaving the judgment as the only legal evidence of indebtedness from such corporation to the plaintiff growing out of that transaction. And such a judgment would be a bar to any effort made to collect the alleged balance on the bonds so compromised.

4. *Judgment taken on compromise in full satisfaction of cause of action; effect of.*—The effect of an express term of such compromise and the judgment thereon, that the judgment rendered in pursuance of the compromise was in full satisfaction of the bonds and coupons held by the

20

[Bank of Mobile v. Mobile and Ohio Railroad Co.]

plaintiff, was to leave the parties as if the plaintiff had never owned or asserted a greater claim against the defendant, than shown by the judgment recovered.

4. *Subrogation of securities; when doctrine can be invoked.*—The doctrine of subrogation of securities presupposes an existing indebtedness or liability; and it can only be invoked by a creditor or one under liability.

5. *Written contract; when varied by oral agreement.*—Where, by the terms of a written agreement of compromise of a pending suit against a town, on bonds issued and delivered by it to a railroad corporation, as security for stock subscribed by the town, and by the railroad corporation assigned to the plaintiff, a judgment for a specified amount, which was less than the face of the bonds, was to be taken by the plaintiff in full satisfaction of the bonds, and no mention was made in such agreement of the stock for the security of which the bonds were issued,—a contemporaneous oral agreement to the effect, that the town, as a part of the consideration moving the plaintiff to make the compromise, was also to transfer to the plaintiff stock in the railroad corporation amounting to eight thousand dollars, would vary, and add an important term to, the written contract, which the law does not allow.

APPEAL from Mobile Chancery Court.

Heard before Hon. H. AUSTILL.

The bill in this cause was filed on the 7th of August, 1880, by The President, Directors and Company of the Bank of Mobile, a corporation under the laws of this State, against the Mobile and Ohio Railroad Company, a corporation created by and existing under the laws of Alabama, Mississippi and other States, and the town of Starkville, located in, and a municipal corporation under the laws of, the State of Mississippi; and the case made thereby may be stated as follows: The town of Starkville, under authority conferred by the laws of Mississippi, subscribed to the capital stock of the Mobile and Ohio Railroad Company in the amount of $25,000, and issued and delivered to the company its bonds to that amount, and obtained a certificate therefor from said company, which is in the following language: "The town of Starkville is entitled to two hundred and fifty shares of the capital stock of this company, in payment of twenty-five thousand dollars of the bonds of said town this day delivered to this company, and which said bonds were issued for the purpose of aiding in the building of a branch road from Artesia west by way of Starkville. The above amount of stock is placed to the credit of said town on the books of this company, and will be transferred from time to time, and and in such amounts and to such persons, as the legal authorities may direct in writing." The "said certificate," as the bill avers, "is in harmony with the charter of said company and nothing therein contained deprives the president and directors of the control of the stock subscribed by said town, and their right to hold the same in trust under section 14 of said charter as security for the payment of the subscription, and enables the

[Bank of Mobile v. Mobile and Ohio Railroad Co.]

company to issue certificates of stock, from time to time, as the subscription shall be paid up, as intended by the charter." This section of the charter enacts, as the bill avers, "that the directors of said company may require the payment of the sum or sums subscribed to the capital stock of said company, at such times and in such proportions, and upon such conditions as they may deem fit; and in case any stockholder shall refuse or neglect to make payment pursuant to the requisition of the directors, the stock of such stockholder, or so much thereof as may be necessary, may be sold by the directors of said corporation at public auction, after the lapse of ninety days from the time when payment became due."

The bonds were payable to the company, or bearer, at the Bank of Mobile, in this State, and bore interest at the rate of seven per cent. per annum, payable semi-annually, for which coupons were attached. Afterwards the complainant purchased $16,000 of these bonds, and, the town of Starkville having defaulted in the payment of interest thereon, the complainant commenced suit in the United States District Court for the Northern District of Mississippi, to enforce the collection of the past due coupons off of said bonds. After this suit was begun, the complainant and the town of Starkville entered into a written agreement of compromise of the bonds and coupons owned by the complainant, by which it was agreed, that the complainant should, at the next term of the court in which said suit was pending, have and take a judgment against said town for an amount stated in the agreement, which was therein estimated to be fifty per cent. of the face of the bonds and matured coupons held and owned by complainant; that said amount was to be paid in four annual installments in amounts and at times stated in the agreement, and that the complainant was "to take the judgment as before herein set forth in conformity with the figures and dates of payment as above specified in full satisfaction of the bonds and coupons thereto attached and herein before described and now held by the Bank of Mobile," the complainant. On the 9th of December, 1878, a judgment was entered in said court in favor of the complainant and against said town in conformity with the terms of the agreement of compromise. Copies of the agreement and of the judgment-entry are made exhibits to the bill. In the written agreement no mention is made of the stock, for which the bonds were issued; but the complainant sets up in the bill a contemporaneous oral agreement between it and said town by which it was to receive, as one of the considerations moving it to make the compromise, eighty of the two hundred and fifty shares of stock which said town had subscribed for; the averments in reference to which are stated in the opinion. The bill further

alleges that it was the duty of said railroad company to enforce the terms of the subscription, "to withhold stock to said town in proportion to the amount of subscription which the latter fails to pay by virtue of said compromise, and to issue the same to said Bank of Mobile, which was subrogated to all the rights of said company, in the transfer of said bonds, that said eighty shares are now the property of said Bank of Mobile, just as they would have been of the Mobile and Ohio Railroad Company in case the latter had retained said bonds and made the compromise before the transfer of the bonds. And this complainant now demands and claims in the name of said Mobile and Ohio Railroad Company, that the directors of said company" issue to complainant "the stock to which it is entitled as above set forth." It is also averred in the bill, that the town of Starkville "claims that the repudiation of a large portion of said subscription did not affect her right to receive said 250 shares of stock, is now demanding the whole 250 shares from said company, has already received more of said stock than the principal of the bonds paid up to date, and that said company, if not restrained by this Honorable Court, will soon issue the entire 250 shares to the town of Starkville; that said town had been enjoying splendid advantages from said branch road since 1873, and "that it is unconscionable and inequitable for said town to enjoy" such advantages, "to repudiate a large portion of said subscription, and then to demand and to receive the whole 250 shares just as if the entire subscription had been met in good faith." The bill does not show whether the judgment rendered on said agreement of compromise had been paid or not.

The prayer of the bill is for an injunction restraining the issuance of any additional shares of the stock of said railroad company to the town of Starkville, until the rights of the repective parties thereto had been settled, and that said company issue to complainant eighty shares of said stock and "deduct a like number from the 250 shares to have been issued to said town of Starkville;" and for general relief. An injunction was prayed for in the bill. The town of Starkville demurred to the bill, assigning several grounds of demurrer, the substance of which was, that it appeared from the bill, that said bonds were issued to the Mobile and Ohio Railroad Company in payment for the 250 shares of the stock of said company subscribed for by said town, and that the complainant failed to show that it had any right, title or equity to any of said stock. The Chancery Court entered a decree sustaining the demurrer, dissolving the injunction and dismissing the bill, which is here assigned as error.

[Bank of Mobile v. Mobile and Ohio Railroad Co.]

Wm. G. Jones, with whom was Geo. E. Critz, Esq., of Stark-ville, Miss., for appellant.

Richard P. Deshon, *contra.*

STONE, J.—When the town of Starkville issued its bonds, and placed them with the Mobile and Ohio Railroad Company as guaranty and security for the payment of the twenty-five thousand dollars stock it had subscribed in said railroad cor-poration, there can be no question that the railroad company retained the control of the stock, in the nature of a lien, to secure the payment of the bonds. In other words, the town of Starkville could not compel the railroad company to issue the certificates of stock, except as it first made payment of the bonds. And it may be conceded that when the railroad com-pany traded and transferred the bonds to the bank of Mobile, the latter corporation succeeded to the equitable rights and lien of the railroad company; and, if necessary to the collection of the debt evidenced by the bonds, could have successfully as-serted its right to the security the railroad company had re-tained on the stock subscribed by the town of Starkville, not then issued. That is not this case. After the default of the town of Starkville in not paying its interest coupons, the bank brought suit to compel their payment, as it had a clear right to do. Pending that suit, the bank and the town agreed on the terms of a compromise, reduced it to writing, and executed it with their several corporate seals, which agreement is made part of the bill. A judgment was thereupon entered up in said cause pursuant to said compromise, and carrying its stipulations into execution. The effect of that compromise and the judgment thereon, was to merge the town's bond liability in the judgment —to destroy the bonds as a cause of action, and to leave the judgment as the only legal evidence of indebtedness from the town to the bank, growing out of that transaction. Any effort to collect the alleged balance of that bond debt, would have been defeated by a plea of former recovery; for a judgment *inter partes,* not reversed, and not successfully assailed for fraud, or on some other ground, is conclusive against each party, who is properly before the court; against the defendant, that the amount adjudged is due, and against the plaintiff, that no more is due on account of the contract or liability sued on. *Crawford v. Simonson,* 7 Por. 110; *Trustees v. Keller,* 1 Ala. 406; *Herndon v. Givens,* 16 Ala. 261; *Mervine v. Parker,* 18 Ala. 241; *Wittick v. Traun,* 25 Ala. 317; *Chamberlain v. Gaillard,* 26 Ala. 504; *Lyon v. Odom,* 31 Ala. 234; *Moore v. Appleton,* 34 Ala. 147; *Bobe v. Stickney,* 36 Ala. 482; *Durr v. Jackson,* 59 Ala. 203.

The present case is stronger even than this. An express term of the compromise and judgment thereon was, that the bank of Mobile was to take judgment in conformity with the figures and dates agreed on and specified, " in full satisfaction of the bonds and coupons thereto attached . . . and now held by the bank of Mobile." The effect of this agreement and judgment was, to leave the parties as if the bank had never owned or asserted a greater claim against the town of Starkville, than that shown by the judgment recovered. —*Masser v. Strickland*, 17 Amer. Dec. 668 ; *Coit v. Tracy*, 20 Amer. Dec. 110.

We need not and do not declare what would be the bank's rights against the stock still held by the railroad company, should it become necessary to resort to it as a means of enforcing the collection of the judgment it recovered against the town of Starkville. That is not the purpose of this bill. On the contrary, the present bill prays that the bank be subrogated to the railroad's lien on the stock, to secure the payment of the residue of the bonds not embraced in the judgment, when by the solemn agreement of the parties and judgment of the court, no such unpaid balance of indebtedness exists. There being no debt, there can be no ground for subrogation of securities. Only a creditor, or one under liability, can invoke the doctrine of subrogation.—1 Sto. Eq. Jur. § 635 ; *McMullen v. Neal*, 60 Ala. 552, and authorities cited.

There is an averment in the bill, not very distinctly made, that one of the considerations moving to the bank in acceding to the compromise, was that it should receive eighty of the two hundred and fifty shares of stock the town of Starkville had subscribed for. This number of shares properly represents the proportion of the stock, which corresponds with the percentage of the bonds the bank surrendered in the compromise. The averment continues : " Mr. Caruthers, representing said town as their attorney in said compromise, fully agreed with said bank of Mobile, that said town, as a matter of law and justice, would relinquish to said bank of Mobile stock to be issued under said subscription to the amount cancelled by the compromise ; that the latter proposition was not incorporated in said written agreement, because the latter was intended as the basis of said judgment ; that said proposition and agreement for this complainant to have said stock, being simply part of the consideration moving the latter to the compromise, and being so obviously reasonable and just, it was not considered necessary to reduce the same to writing ; and complainant avers it was fully understood at the time of making said compromise, by all the parties thereto, that the stock to be issued to said town would be reduced in proportion to the principal of the bonds

[The State of Alabama ex rel. Pinney v. Williams.]

cancelled by the compromise." It will be remembered that the written agreement of compromise is made part of the bill, and that it contains the stipulation that the judgment to be rendered pursuant to its terms, was to be taken and received "in full satisfaction of the bonds and coupons" held by the bank of Mobile, and embraced in that suit. Not a word is said in the written agreement of compromise about the issue of any stock to the bank of Mobile, or of its right to claim the same. It requires the aid of liberal intendments, to reach the conclusion that what is stated in the bill amounts to an averment that the obligation was ever entered into by the town of Starkville to have any of the railroad stock issued to the bank of Mobile.

But if there was such outside oral agreement or understanding, can it be enforced ? The written contract says the sum of the judgment to be confessed (specifying the exact amount), was to be in full satisfaction of the bonds and coupons. The oral agreement, if sufficiently averred, shows there was to be a transfer of stock in addition, amounting to eight thousand dollars. This would vary, and add a very important term to the written contract, which the authorities do not allow.— *Clark v. Hart*, 57 Ala. 390; *Hart v. Clark*, 54 Ala. 490; *Dupuy v. Gray*, Min. 357; *Somerville v. Stephenson*, 3 Stew. 271; *Mead v. Steger*, 5 Por. 498; *Hair v. La Brouse*, 10 Ala. 548; *Bryant v. Stephens*, 58 Ala. 636; *Winston v. Browning*, 61 Ala. 80; *Couch v. Woodruff*, 63 Ala. 466; *Broughton v. Mitchell*, 64 Ala. 210; *Skinner v. Hendrick*, 1 Amer. Dec. 43; 1 Chit. Contr. 140.

Affirmed.