## BOBE'S HEIRS vs. STICKNEY.

[BILL IN EQUITY FOR SPECIFIC PERFORMANCE OF CONTRACT OF SALE.]

1. *What is revisable.*—On appeal by the complainants from a final decree in chancery in their favor, assigning as error the rules adopted by the chancellor for the statement of the accounts between the parties, the appellate court will not, at the instance of the appellees, consider the equity of the bill.

2. *When exception to master's report is necessary.*—Where the chancellor, in ordering a reference to the master, prescribes the rules to be

observed in the statement of the account, and the master conforms to those rules, an exception to his report is not necessary to enable the appellate court to examine into the correctness of the account thus stated.

3. *Construction and weight of answer.*—A statement in an answer, to the effect that "respondent does not admit the statement of moneys paid as charged in the bill to be correct, but avers that the aggregate of said payments but little (if any) exceeded the amount of principal and interest due on the first of said notes," does not so negative the payments claimed in the bill as to require the testimony of two witnesses, or of one witness with corroborating circumstances, to overturn it.

4. *Predicate for introduction of secondary evidence.*—Secondary evidence of the contents of a vendor's title-bond, and of his several receipts for partial payments made by the purchaser, is admissible, on proof that said papers were last seen, after the purchaser's application for the benefit of the bankrupt act of 1841, on file with his other papers in the office of the assignee in bankruptcy; that said assignee afterwards absconded, and was removed from office, having never turned over to his successor the books and papers belonging to his office; and that the succeeding assignee, after diligent search in his office, could not find them, and could obtain no information concerning them from his predecessor, to whom he made several applications by letter.

5. *Conclusiveness of judgment.*—A judgment at law on a promissory note, given for the purchase-money of land, is conclusive between the parties as to the amount then due on the note; and the defendant, when subsequently seeking a specific performance of the contract in equity, cannot claim the benefit of payments which ought to have been credited on the note.

6. *Application of payments.*—If a debtor, owing several demands to the same creditor, makes a general payment, without giving any directions as to its appropriation, the creditor may, at his election, apply it to any one of the debts then due, but cannot prefer a debt not due, to the exclusion of one due or past due; and if he fails to make any election, the law will make the application according to fixed rules, preferring a debt due or past due to one not due.

7. *Same.*—Where a debtor owes two notes, maturing at different times, and the creditor has brought suit on the first; and, on the day the second note matures, the debtor makes a general payment, without giving any directions as to the manner of its appropriation,—the fact that the creditor afterwards takes judgment on the first note, for the full amount due thereon with interest, shows an election on his part to apply the payment to the second note.

APPEAL from the Chancery Court at Mobile.
Heard before the Hon. WADE KEYES.

THE original bill in this case was filed, on the 23d November, 1848, by the heirs-at-law of Thomas Bobe, deceased, infants suing by their next friend, against Henry Stickney, and the personal representative of said Thomas Bobe; and sought the specific performance of a contract, by which said Stickney, on the 26th November, 1836, sold to the said Bobe a lot in the city of Mobile. By the terms of the contract, as alleged in the bill and admitted in the answer, Bobe executed his three promissory notes for the purchase-money, due one, two, and three years after date, for $602 50, $855, and $907 70, respectively; and Stickney executed and delivered to him a bond, conditioned to make "a fee-simple warranty title" to the lot on the punctual payment of the notes at maturity, together with the taxes and other demands. The title-bond, a copy of which was made an exhibit to the original bill, stated that Bobe, by the terms of the contract, agreed to erect "a good house or shop" on the lot; and it was admitted that he did erect improvements, the value of which was controverted. Bobe went into possession of the lot under his purchase, and continued in possession until some time in 1842, when, as the bill alleged, "said Stickney got the possession by inducing the tenant of said Bobe to attorn to him"; but the answer alleged, that Stickney took possession under a purchase at the tax-collector's sale, Bobe having failed to pay the taxes as he agreed to do.

The bill alleged, that the following payments were made by Bobe on the notes given for the purchase-money: June 14, 1837, $525 50; December 13, 1837, $200; April 16, 1839, $5; June 22, 1839, $200; Nov. 1, 1839, $50; Nov. 26, 1839, $100; March 17, 1840, $200; May 7, 1840, $150; August 11, 1840, $100; March 15, 1841, $100; and that some of these payments were endorsed on the notes, while separate receipts were taken for the others. In reference to these payments, the answer contained the following statement: "Respondent admits, that said Bobe, during his life-time, made payments of money to him, at various times, on account of the purchase-money, the consideration for said land; the times of which pay-

ments, and the amounts, this defendant cannot specify, having kept no copies of the receipts, or memorandum of payments; but he does not admit the statement of moneys paid as charged in the bill to be correct, but avers that the aggregate of said payments but little (if at all) exceeded the amount of principal and interest due on the first of said notes, and the additional one hundred and thirty dollars, which was to be a cash payment." Stickney brought suit on the second note, in December, 1838, and, on the 6th March, 1840, recovered a judgment thereon for $1,014 60, besides costs; on which judgment an execution was issued, which was returned stayed by order of the plaintiff. The bill alleged, that Stickney had received from the rents of the land more than sufficient to pay the residue of the purchase-money, after deducting the payments made by Bobe; but the defendant denied this averment, and declared that, "if the said complainants shall pay him the original purchase-money, with interest, costs and expenses, and the court shall so decree, he is ready at any moment to execute to them a fee-simple title to said land." In his answer, however, to the second amended bill, occurs this statement: "Respondent adopts, as part of this his answer, all his former answers, except so much as offers to reconvey the land in the said bill described on payment by plaintiffs of the original purchase-money, interest, and costs."

Bobe died in May, or June, 1843, having been declared a bankrupt, under the act of congress of 1841, on the 3d May, 1842. The discharge in bankruptcy was set up by the defendant, in his answer to the original bill, by way of plea to the relief sought. The complainants afterwards filed an amended bill, in which they alleged said Bobe's application for the benefit of the bankrupt law, and his discharge under the decree of the court; that he surrendered to the assignee in bankruptcy all his rights of property, &c.; that his rights under the said contract with Stickney were never sold or otherwise disposed of by the assignee; and that Bobe's creditors, after his death, released to the complainants all their demands against his estate. In his answer to the amended bill, the re-

spondent admitted, that he had never been sued on his title-bond by any person claiming under the assignee in bankruptcy; but he required proof of the fact that the evidences of said Bobe's interest under the contract had been delivered to the assignee in bankruptcy, and of the execution of the creditors' release to the complainants.

A. Lavisson and J. H. Smoot were the chief witnesses examined by the complainants. Lavisson testified, that having been employed by Bobe's widow, soon after her husband's death, to bring suit against Stickney for the lot in controversy, he went to the office of P. T. Harris, then assignee in bankruptcy, for the purpose of examining Bobe's papers relating to the matter; that Joseph H. Young, the partner and agent of said Harris, took out a bundle of papers from an iron chest in his office, opened it, and handed to him a title-bond and several receipts, which purported to be in the handwriting of said Stickney, and a promissory note signed by Bobe, corresponding with the second one of the notes above described; that he took copies of these documents, which were attached to his deposition; and that said Young has since died. The receipts referred to by this witness, and the matters of account connected therewith, are particularly described in the opinion of the court, and, therefore, require no further notice here. Smoot testified, that in 1848, after said Harris had left the State, and had been removed by the court from his said office, he was appointed assignee in bankruptcy for the southern district of Alabama; that he immediately made diligent inquiry for all books and papers belonging to the office, but was not able to procure them; that he wrote several times to Harris, asking information about said books and papers, and particularly about Bobe's papers above described, but received no reply from him; and that he never qualified as assignee in bankruptcy under his appointment, because he could not get the books and papers belonging to the office.

The cause was heard, on pleadings and proof, in April, 1852, before Chancellor Lesesne, who ordered a reference of the matters of account to the master; and at the April

term, 1853, the master reported a balance of $242 against the defendant; but the report does not appear to have been acted on by the chancellor. At the January term, 1855, Chancellor Keyes ordered a re-statement of the accounts, and directed the master to take the judgment on the second note as conclusive of the amount then due from Bobo to Stickney. Under this reference, the master reported, at the January term, 1856, that Stickney was indebted to the complainants in the sum of $996. The complainants excepted to this report, because the master had omitted to charge Stickney with $50, alleged to have been paid on the 1st November, 1839; and the defendant excepted to each credit allowed on the second and third notes, on account of the insufficiency of the evidence by which they were established. At the April term, 1856, the chancellor overruled the complainants' exception, and sustained the defendant's exceptions; and ordered a re-reference to the master, with the following directions: "In stating the account, the master will credit the complainants with the first note of $812 50, mentioned in the bill as having been paid by Bobo in his life-time, and $120 for the additional land mentioned in the pleadings and proof; and will credit the defendant with the amount of the judgment on the second note, and interest, and with the amount of the third note and interest, without reference to the payments set up in the bill, which, in the opinion of the court, are not sufficiently proved. He will also credit the defendant with the payment of all taxes and expenditures for valuable improvements, and charge him with all rents received, or such as he might with reasonable diligence have collected." Under this order of reference, the master reported, at the same term, a balance of $2640 due to the defendant; and the report was confirmed by the chancellor, without exception or objection by either party. The chancellor then rendered a final decree, directing the defendant to convey the lot to the complainants, on payment by them, within ninety days, of the amount reported to be due him, and ordering the bill to be dismissed if payment was not made within ninety days.

The final decree, and the last two orders of reference, are now assigned as error by the complainant.

K. B. Sewall, for appellants.—1. The case made by the bill entitles the complainants to relief. Time is not of the essence of the contract.—Davis v. Hone, 2 Sch. & Lef. 347; Lennon v. Napper, *ib.* 684; Pincke v. Curteis, 4 Bro. C. C. 329; Seaton v. Slade, 7 Vesey, 265; Hearne v. Tennant, 13 *ib.* 287; Hale v. Smith, 14 *ib.* 433; Parker v. Thorold, 13 Eng. L. & Eq. 418; Taylor v. Longworth, 14 Peters, 172; Edgerton v. Peckham, 11 Paige, 352. Moreover, the defendant waived a punctual compliance, by acquiescing in the delay, receiving payments from time to time without objection, and reducing one of the notes to judgment.—3 Madd. 446; 19 Ves. 220; 3 Mer. 74; 4 Hare, 432; 4 Munf. 332; 2 Barb. (S. C.) 37; 7 Ohio, 97; 11 *ib.* 124; 8 Paige, 423; 10 Ala. 790; 2 Y. & Coll. 54 *a*, 66.

2. The delay is satisfactorily accounted for, by the death and bankruptcy of Bobe, and the infancy and condition of his heirs.—New Barbadoes Toll Company v. Vreeland, 3 Green's Ch. 160.

3. The bankruptcy of Bobe is no bar to the suit. The failure of the assignee in bankruptcy to dispose of the claim by sale, or to attempt to enforce it by suit, was an abandonment of his right to enforce the contract.—3 Sandf. Ch. 333; 6 Law Rep. 313.

4. In his answer to the original bill, the defendant submitted to a decree on the payment of the balance due him, and that submission could not be afterwards withdrawn.

5. The proof of the receipts signed by Stickney was ample, and a sufficient predicate was laid for the introduction of secondary evidence. The assignee in bankruptcy was the proper custodian of the original receipts, and they were last seen among the papers on file in his office; diligent search and inquiry for them was proved to have been made by the succeeding assignee. The copies were made by Lavisson from the originals, which he testifies were in the handwriting of Stickney; and his testimony, which is sufficient, of itself, to outweigh the

evasive statement of the answer, is corroborated by the defendant's admissions.

6. The judgment is not conclusive against the allowance of the payments evidenced by these receipts; because they were all made subsequent to the appearance term, and could only have been given in evidence under a plea *puis darrein continuance*, while the judgment was by default.—Franklin v. McGuire, 10 Ala. 560. Moreover, the judgment concerns only a part of the purchase-money, while this suit seeks an account of the whole; and equity will not permit the defendant to shield himself behind the judgment from liability for payments actually received.—Dart on Vendors, 534; Coote on Mortgages, 604; 2 Hilliard on Mortgages, 113. The mistake of the clerk, in the calculation of interest on the note, is patent on the face of the judgment, and ought to be corrected.—20 Ala. 304; 19 Johns. 246.

P. HAMILTON, *contra.*—1. The testimony of Lavisson is the only evidence on which the complainants rely to show error in the account as stated under the directions of the chancellor; and that, it is submitted, is wholly insufficient. He is a willing witness, and represents himself as a lawyer, employed to bring this suit; and his deposition is in his own handwriting. He does not prove payments within his knowledge, nor the handwriting of the receipts which he says he saw. The original receipts are not produced, nor is their loss sufficiently established.

2. The judgment is conclusive as to all payments alleged to have been made prior to its rendition.—Foster v. Wood, 6 John. Ch. 90; Simpson v. Hart, 1 *ib.* 98; Smith v. Lowry, *ib.* 321; 2 Ala. 388.

3. The complainants filed no exceptions to the report made by the master under the last order of reference; and they cannot now be heard to raise objections to the account as stated by him.

4. If the chancellor erred in the matters of account, the complainants have not been thereby injured, since they were not entitled to relief. Bills for specific performance are always addressed to the discretion of the

32

court.—6 John. Ch. 222. Here, the bill was filed twelve years after the contract was made, three years after the statute of limitations had barred a recovery on the notes, and five years after the defendant had taken possession under his purchase at the tax-collector's sale; and nearly every term of the contract appears to have been broken by the complainants' ancestor. Under such circumstances, they have no claim to the favorable interposition of the court.—4 Porter, 307, 313, 384; 16 Ala. 451; 1 John. Ch. 370; 4 Sm. & Mar. 694; 2 Story's Equity, § 771. Moreover, the bankruptcy of the complainants' ancestor is a bar to the relief sought by them, (11 Ala. 1002; 12 ib. 666; 3 McLean, 235; 2 Story, 360; 7 Blackf. 361; 5 Watts & S. 9;) and the fact that they are infants, against whom there is no mutuality of remedy, is a sufficient reason for dismissing their bill.—1 Madd. 12; 1 Sch. & Lef. 13, 20; 4 Russell, 298; Story's Eq. Pl. § 394; 1 Dan.Ch. Pl. 87, 88.

STONE, J.—The bill in this case was filed by the heirs-at-law of a purchaser, against a vendor, to obtain specific performance of a contract of sale of real estate to their ancestor. The chancellor granted relief, but imposed on the complainants, as a condition precedent, the payment of a certain sum, alleged to be the unpaid balance of the purchase-money. From that decree the complainants have appealed, and assign as error that the chancellor erred to their prejudice in laying down rules for the guidance of the register in taking the account. The assignments of error, in their direct effect, can not and do not raise any point on the equity of complainants' bill, or the right of complainants to maintain this suit. It is contended, however, for appellee, that there is no equity in the bill of complainants; and consequently, that the decree of the chancellor should not be reversed, even if we should find that in the matter of the account the court had fallen into an error.

This is not the first time we have had occasion to consider this question, although we have not, in terms, expressed our opinion upon it. We will now proceed briefly

to do so, and to give a few of the reasons which induce us not to adopt the practice indicated.

There is, in this case, no assignment of error, under which we could, with any propriety, dismiss the complainants' bill. The complainants assign the errors, and, of course, do not aver that they have no right to relief. The most that we could do—and, as we understand it, the appellee asks us to do no more—would be to affirm that the complainants had obtained greater relief than they were entitled to, and, on that account, refuse to reverse the. chancellor's decree. Refusing to reverse, the result would be an affirmance of the decree below. This, in many cases, would operate a very great oppression. It would cut off all right of amendment, in cases in which, possibly, the very defect, on account of which we should refuse to reverse, might be remedied in the court below.

If the chancellor had decreed absolutely against the complainants below, and the case had come here by appeal, we would, in most cases, feel it our duty to inquire if the bill contain equity; and finding that it does not, to affirm the chancellor's decree, although he may have rested his judgment on a different and insufficient reason. That would have presented the familiar principle of a right judgment for a wrong reason.

Without intending, in this case, to intimate any opinion on the sufficiency of the bill of complainants, we feel it our duty, in the condition in which this case comes before us, not to inquire into that question. The equity of the bill not being raised by any of the assignments of error, that question must remain *res integra* in this court.

[2.] The question of the account is alone presented by the assignments of error. It is objected for appellee, that this question can not be considered, because there were no exceptions filed to the report of the register. The decretal order of reference defined with precision the rules by which the register was to be governed in taking the account. One of those rules was, to reject, as not proved, all payments claimed on the second and third notes. The argument chiefly pressed in this court for complainants is, that large payments should have been allowed on the

second and third notes. It was not necessary to except to that part of the proceedings before the register, because that officer conformed to the directions contained in the decree of the chancellor. The error, if any, is patent on the fact of the decree, without resort to the report of the register. In such cases, exceptions to the report would be supererogatory.

It is further urged for appellee, that the testimony in this case is insufficient to establish the payments claimed; and that, on this account, the decree of the chancellor should be affirmed. This seems to be the ground on which the chancellor based his opinion. The proof of payments, beyond those allowed, rests mainly on the testimony of the witness Lavisson. The argument is, that the testimony of this witness is suspicious, and is insufficient to overturn the denials in the answer. We hold, that this evidence is credible, and that it does sufficiently prove the payments claimed, for the following reasons.

[3.] The answer itself is not entirely above criticism, and does not, when fairly construed, negative the payments claimed, in such manner as to require two witnesses, or one with corroboration to overturn it. Its language is: "This respondent admits that, during his life-time, the said Bobe made payments of money to him at various times, on account of the purchase-money, the consideration for said land; the terms of which payments, and the amounts, this defendant cannot specify, having kept no copies of the receipts, or memorandum of payments; but he does not admit the statement of moneys paid as charged in the bill to be correct, but avers that the aggregate of said payments but little (if at all) exceeded the amount of principal and interest due on the first of said notes, and the additional one hundred and thirty dollars, which was to be a cash payment." It will be observed, that this language does not deny that the payments exceeded the first note and the additional $130. The averment is, that the excess of those payments was little, if there was in fact any excess. What meaning the defendant attached to the expression "but little", we have no means of ascertaining. Under the strictest rule, the an-

swer can not be regarded as a denial that the payments had exceeded the amount of the first note and interest, and the amount of the after purchase, $130.

It will be further observed, that the defendant states in his answer that he "kept no copies of receipts, or memorandum of payments." On page 42 of the record, in the proceedings before the register, are found what are styled, "*Entries from Stickney's book.*" In that book, as appears from the *entries*, Bobe was debited with the amount of the first note, with the additional purchase of two feet front, $932 50. Immediately under this he is credited with "cash, as per receipt given to you," of date 1837, the several sums of $300, $100, $100, $5 50; "allowed you on above, interest, $20;" then added, "by cash, as per my receipt, $200"; footed up, $725 50; subtracted, leaving $207 balance; and under this, in pencil, "settled above note." It will thus be seen, that Mr. Stickney had kept a *memorandum* of some of the *payments*.

[4.] It is objected to the evidence of Lavisson, that no sufficient predicate had been laid of the loss of the original bond and receipts, to let in the secondary evidence of their contents. We think the evidence of Lavisson and Mr. Smoot is full to this point.

We are asked to disregard the evidence of Lavisson. We find nothing in the body of the deposition to cause us to distrust it. On the contrary, it is strongly fortified by the following facts: *First*, The answer of Stickney admits, that the paper which he, Lavisson, produces as a copy of the title-bond, is a substantial copy, both in the body of it, and as to the note written thereon, evidencing the subsequent sale of two additional feet front. *Second*, The copy-bond produced by Lavisson describes these notes, corresponding precisely with the notes admitted by Stickney, and produced, in part, by him on the reference. *Third*, One of the papers, a copy of which is furnished by Lavisson, as taken by him from the original in the custody of the assignee in bankruptcy, is in the following form: "Mr. Thos. Bobe has paid, including interest on the same, for account of his first note, five hundred and twenty-five dollars and fifty cents, the same being

endorsed on the back of said note, 14th June, 1837, (signed) Henry Stickney." Recurring again to the "entries from Stickney's book", copied in the record, we find the following:

"1837.                                                       Cr.

By cash, per receipt given to you ................... $300 00
"    "    "    "    "    "    "    ................:..... 100 00
"    "    "    "    "    "    "    ......... ......... 100 00
"    "    "    "    "    "    "    ................... 5 50
"    " allowed you on above, interest ............ 20 00

Add those sums together, and they produce $525 50, the amount of the receipt copied above. Immediately below the sums stated above, also of date in 1837, is another credit of $200, "as per my receipt." Looking into the deposition of Mr. Lavisson, we find but one other copy receipt bearing date in 1837, which is for $200, dated December, 13th. These corroborations, in our judgment, fully support the testimony of the witness Lavisson; and we feel no hesitation in holding the facts he testifies to to be fully proved.

[5.] The state of the proof in this case renders it necessary that we should lay down certain rules for the application of the payments made by Mr. Bobe. The first note was clearly paid in full, and we need give it no consideration, as none of the payments hereafter considered were or should have been applied to that note. It had been, before that time, fully paid. The second note matured Nov. 26, 1838; was put in suit, and reduced to judgment, March 6th, 1840, for full amount and interest. This judgment is conclusive evidence between the parties, that the amount for which it was rendered was then and there due and owing from Bobe to Stickney. The third note matured Nov. 26th, 1839, and was never sued on. Certain payments were made by Bobe, between the time when the second note matured, and the time when that note was reduced to judgment. These payments are: April 16, 1839, $500; June 22, 1839, $200; Nov. 1, 1839, $50; Nov. 26, 1839, $100. Of these sums, the payment of June 22, 1839—$200—was applied to the second note, as is shown by the face of the receipt. This payment,

then, was lost to Mr. Bobe, by his failing to make defense when sued on that note.—Mervine v. Parker, 18 Ala. 241; Shep. Digest, 666, §§ 42, 46, 51, 54.

[6.] The following are rules for the application of pay- ments, when the same debtor owes the same creditor more debts than one: 1st, the debtor, making payment, has the paramount right to direct and determine on which debt the payment shall be applied; 2d, the debtor failing to give direction, the creditor may then elect on which debt, then due in the same right, the payment shall be applied; but he cannot prefer a debt not due, to the ex- clusion of one due or over due. The election need not be shown by positive proof; it may be proved by circum- stances. 3d, No direction or election, either by debtor or creditor, being shown by the proof, or deducible from the circumstances, the law, on certain rules of its own, not necessary to be here considered, makes the application. Callahan v. Boazman, 21 Ala. 246; McDonnell v. Branch Bank, 20 Ala. 313; Harrison v. Johnston, 27 Ala. 445; 2 Parsons on Contr. 140–7; 2 Story on Contr. §§ 878 to 880; Clayton's case, 1 Mer. 607–8; Gwynn v. Whitaker, 1 Harris & Johns. 751; Jones v. U. S., 7 How. (U. S.) 681; P. M. Gen. v. Furber, 4 Mass. 333; U. S. v. Ward- well, 5 Mass. 82; U. S. v. Bradbury, Daveis, 146; Boden- ham v. Purchas, 2 B. & Ald. 39. We feel safe, however, in holding, that when the law must be appealed to for the rule of application, unaided by facts or circumstances tending to show an application either by the debtor or creditor, the payment must be applied to a debt due, in preference to one not then due.

There is no proof in this record which tends to show that Mr. Bobe, the debtor, gave any direction as to the ap- plication of the following payments: $500, April 16, 1839; $50, Nov. 1, 1839; and $100, Nov. 26, 1839. As to the payments of $500 and $50, whether we regard the elec- tion as made by the creditor or the law, the result is the same. They were paid before the maturity of the third note; and therefore, neither the election of the creditor, nor the intendment of the law, could apply them to the note not then due. They were payments on the second

note; and not being used in defense to the suit on that note, they are lost to the complainants.

[7.] As to the payment of $100, on 26th Nov. 1839, we think a different rule must govern. That payment was made on the very day on which the third note matured. The creditor having the right to make the application of that sum, we think that, by taking judgment on the second note, for the full amount for which it called, he furnishes evidence that he had elected to place that payment on the third note.

The other payments—viz., March 17, 1840, $200; May 7, 1840, $150; Aug. 11, 1840, $100; March 15, 1841, $100; were all made after the judgment was recovered. These sums, together with the payment of *$100* on *26th* Nov. *1839*—making $650—should be allowed to the complainants, as of the dates when they were severally made.

This result renders a re-statement of the account necessary.

Decree of the chancellor reversed, and cause remanded.