# Levystein & Simon *v.* Whitman *et al.*

### *Application of Payments.*

1. *A debtor may direct the application of a payment.*—A debtor before, or at the time, of payment, may direct its application ; if he does not, the creditor may apply it as he pleases.   If the money paid is derived from a particular source or fund, its payment must be applied to the relief of such fund, unless an agreement be made for its application otherwise.

2. *If a payment be disputed, the party affirming it must prove it.*—If a payment be disputed, the burden of proving it lies on the party affirming it ; and when the debtor asserts that he directed the appropriation of a partial payment, the burden of showing it rests on him.

3. *A creditor can not divert a payment without the consent of the debtor.* It is the application of the payment by the debtor which deprives the creditor of this right, and also hinders the law from appropriating it ; but if the creditor proposes to divert the payment from the relief of the fund or source whence the money is derived, he must obtain authority from the debtor for such diversion.

APPEAL from the Chancery Court of Lowndes,
Heard before the Hon. HURIOSCO AUSTILL.
The facts are contained in the opinion.

STONE & CLOPTON, for appellants.

ELMORE & GUNTER, for appellees.

BRICKELL, C. J.—The bill is filed to foreclose a mortgage, and the single point of controversy is whether the mortgage debt had been paid prior to the commencement of suit.   The mortgagor was at the time of the several payments, owing the appellants a debt by account unsecured, and one of the payments was derived as is claimed, from a sale of cotton covered by the mortgage, while the other was derived from a sale of cotton, the mortgage did not embrace. The whole controversy is dependent on the evidence, rather than on any question of law.   The rules of law governing the application of partial payments, when the party making the payment is indebted to the party receiving it, on more than one account, are well settled by former adjudications of this court, which merely follow the general current of decision.   So far as they apply to the present case, they may be thus stated ; the debtor before, or at the time of payment, may

[Levystein & Simon v. Whitman.]

direct its application—if he does not direct its application, the creditor has the right to apply it as he pleases—but if the payment is derived from a particular source or fund, it must be applied in relief of the source or fund from which it arises, in the absence of an agreement to the contrary.—*Beebe v. Stickney*, 36 Ala. 482; *Robinson v. Allen*, ib. 524; *McDonnell v. Br. Bank Montgomery*, 20 Ala. 313; *Callahan v. Bozeman*, 21 Ala. 336; *Webster v. Singley*, 53 Ala. 208. If a payment is disputed, the burthen of proving it, lies on the party affirming it. And when the debtor claims to have directed the appropriation of a partial payment, the payment not being the matter of dispute, the burthen of proving the direction rests on him. It is the direction which takes away the right of the creditor to apply it, and relieves it from the application the law would make of it, in the absence of an application by either.—2 Jones on Mortgages, § 906; *Knox v. Johnston*, 26 Wisc. 41. So, if the creditor proposes to divert a payment from the relief of the source or fund, from which it arises, he must show for the diversion, the authority of the party to be affected.

Keeping in view these principles we have examined the evidence to ascertain *first*, whether the mortgagor, at or before the delivery of the cotton not embraced by the mortgage, directed the application of the proceeds of its sale, to the payment of the mortgage debt. The fact of such direction, as we have said, is to be proved by the mortgagor. This cotton seems to have been the property of Lamkin and the mortgagor as tenants in common of a crop, and was to share on the division of the crop, to which the mortgagor was entitled. Lamkin states that he was present at an interview between the mortgagor, and one of the appellants, in which it was agreed this cotton should by him be delivered to the appellants, and the proceeds of its sale applied to the payment of the mortgage debt. The time of this interview, he fixes as the election day in the fall of 1871, and its place as Lowndesboro. The written request of the mortgagor to the appellants to take up the mortgage, is dated at Lowndesboro, and on the seventh day of November, 1871, which is matter of law, was the election day of that year. The law day of the mortgage had then passed, and it is but fair to presume, there was in this interview, some statement made of the reasons and motives, influencing the mortgagor to request and the appellants to agree to *take up* the mortgage. If these reasons and motives were stated, they would probably shed light on the fact whether such an agreement was made, and

would confirm or weaken the force of the testimony of the witness. That there was other conversation between the parties, the witness states, but he recollects no more than this agreement, and it is evident he is stating the effect or the impression made on him by what was said, rather than what was actually said. All evidence of verbal admissions or declarations, must be received with *great caution.*—1 Green. Ev. § 200. And one of the soundest reasons for the rule is that it is almost impossible for the witness proving them, to avoid stating rather *what he understood the parties to mean, than what they said,* so that the triers of the fact, may for themselves determine the true import and meaning of the admission or declaration.

Passing over the infirmity of this evidence, it is not consistent with the testimony of the mortgagor, who proves no agreement made with the appellants at the time they were requested to *take up* the mortgage, but instructions given by him at the time of the delivery of the cotton, to apply it to the payment of the mortgage debt. The delivery of the cotton was made by Lamkin, more than one month after the mortgage was taken up, and he states that at the time of the delivery, no instructions were given as to its application. The appellants in their testimony deny that there were any instructions given at any time as to the application of the cotton, and state that it was not applied to the mortgage debt, but to an unsecured debt owing them by the mortgagor. At the time the appellants agreed to *take up* the mortgage, the mortgagor was indebted to them for advances and merchandise in a sum exceeding four hundred dollars. The day of and the day after the delivery of the cotton, this indebtedness is increased without any other payment, (than the one hereafter referred to as claimed to have been derived from cotton embraced in the mortgage) by an advance of money, (more than three hundred and fifty dollars), and merchandise, amounting to more than seven hundred dollars, in the aggregate. If the appellants agreed, or if instructions were given them to apply the cotton to the mortgage debt, the singular course of dealing was that they were lessening a debt secured, and increasing an unsecured debt. For it is not insisted that it was intended the mortgage debt should be extinguished by the *taking of it up,* as it is termed by the parties. The mortgage was to remain a security for the debt, and all that was intended, was a mere change of creditors. We conclude it is not shown by a preponderance of the evidence, that it was agreed before, or that instruc-

tions were given at the time of the delivery of the cotton to apply it to the mortgage debt, and consequently the appellants had the right to apply it to the unsecured debt.

The other payment, we think is shown to have been derived from the cotton crop covered by the mortgage. It is the fair inference from the evidence, that this fact was known to the appellants when they received and sold it, and on them rests the burden of showing that there was an agreement either express or implied with the mortgagor, by which it would be applied otherwise than to the mortgage debt. When the arrangement was made to take up the mortgage, or rather for its assignment to the appellants, the mortgagor said, he expected to obtain the money to pay the mortgage debt from other sources than the cotton; and that the cotton should be applied to the payment of the debt he owed for advances. This is not controverted by the mortgagor in his evidence, and it seems to us corroborated by the course of dealing between the parties. If there was no agreement between the mortgagor and the appellants in reference to this cotton, the mortgage gave them the immediate right to its possession and power to sell and apply it to the payment of the mortgage debt. Yet, it seems from the mortgagor's evidence, that on the 20th of December, 1871, *he left the receipts for the cotton,* with the appellants, to hold until it would bring twenty cents per pound. The receipts were most probably from a warehouseman, or other person, with whom he had stored it, and he gives directions as to its sale, inconsistent with the rights of the appellants under the mortgage, which had been assigned them. On the next day after the sale of the cotton, he obtains in money from the appellants six hundred and fifteen dollars, and merchandise amounting to several hundred dollars in addition, the cotton having sold for seven hundred and sixty-six 15-100 dollars. In view of all the facts we feel satisfied that there was an agreement as stated by the appellant, Simon, that the cotton should be applied to the unsecured debts. and that the mortgagor was expected from other sources to pay the mortgage debt. A payment of the mortgage debt not being shown, a decree for foreclosure should have been rendered. The decree of the chancellor is reversed, and a decree will be here rendered granting the relief prayed for by the bill.