# Heard *v.* Pulaski.

*Bill in Equity for Specific Performance.*

1. *Application of payments.*—When several debts are due by a debtor to one creditor, and he makes a partial payment, he may direct to which debt it shall be applied, unless there is some particular relation, legal or contractual, which denies him this right of election; and if, having this right of election, he makes a partial payment without di-

[Heard v. Pulaski.]

recting its particular application, the creditor may at once make the application, but not to a debt or liability not yet due.

2. *Partnership accounts; when liability between them matures.*—Where the vendor and purchaser of land, while the purchase-money is due and unpaid, enter into a partnership venture for getting out, rafting and selling timber, the purchaser agreeing to superintend the work, while the vendor paid for provisions and labor, and the net profits and losses were to be provided between them; until the timber is rafted and sold, and the net profits or losses ascertained, there is no debt or liability due from the purchaser to the vendor, to which the latter can apply a partial payment.

3. *Conclusiveness of judgment.*—The purchaser having brought an action at law against his vendor, alleging full payment of purchase-money and the failure or refusal of the vendor to make titles according to the condition of his bond, and judgment on verdict being rendered for the defendant; while such judgment is not conclusive as to the amount due, it is conclusive of the fact that something is due; and on bill afterwards filed by the purchaser to compel a specific performance, alleging full payment of the purchase-money, while the judgment at law is unreversed and in full force, although the evidence adduced before the register may show full payment before the judgment was rendered, he must report that a nominal sum was due.

APPEAL from Butler Chancery Court.
Heard before the Hon. JNO. A. FOSTER.
The opinion states the facts.

GAMBLE & RICHARDSON, for appellants.

STALLINGS & WILKINSON, *contra.*

STONE, C. J.—In May, 1881, Pulaski purchased from Heard two hundred and forty acres of land, at the agreed price of three hundred and sixty dollars, secured by note, due in October, 1881. Heard gave Pulaski an obligation to make title when the purchase-money should be paid, and authorized him to go into immediate possession. The present suit is a bill by Pulaski to enforce specific performance of the contract, alleges full payment of the purchase-money, and offers to pay any balance, should an unpaid balance be found. The answer denies payment, and claims that there is a considerable balance unpaid. Much testimony was taken, and it is greatly in conflict. The chancellor decreed that the complainant was entitled to relief, and he ordered a reference and report to ascertain whether the purchase-money had been paid; and if not in full, to what extent it had been paid. The error complained of, questions the propriety of the rules declared for taking the account.

It is among the uncontroverted questions in this case, that in the winter of 1881–82, a lot of timber was sold, gotten out by Pulaski, from which Heard realized on March 6, 1882, five hundred and twenty 70-100 dollars. This money, Pulaski con-

tends, paid the purchase-money of the lands, some other charges which were rightly taken out of it by Heard, and left a balance due to Pulaski of twenty dollars. Heard contends that other claims he sets up against Pulaski should also be deducted from the money, before any credit from that source should be entered on the land note.

The rules for appplying payments, where the same debtor owes more than one debt, are too well settled to admit of further dispute. The paying debtor may, at the time of payment, direct to which debt it shall be applied, and his direction must be obeyed, unless there is some relation, legal or contractual, between the debt and the payment which denies to the debtor this right of election. The paying debtor failing to declare an election, the receiving creditor may elect to which debt the payment shall be applied, provided, that election is made on receipt of the payment. But this right of election and application by the creditor can not be so exercised, as to apply the payment to a debt or liability not due.—*Bobe v. Stickney*, 36 Ala. 482; *Robinson v. Allison, Ib.* 525; *Aderholt v. Embry*, 78 Ala. 158; *Johnson v. Thomas*, 77 Ala. 367; *Taylor v. Cockrell*, (in MS.) Ala.

Another important element enters into the decision of this case, presented in the testimony, and noticed by the chancellor in his decree. The cross demand of five hundred and twenty 70-100 dollars, relied on by Pulaski as payment of the land note, grew out of individual dealings between him and Heard. It had nothing to do with any partnership, or joint adventure between them. Separate and apart from this transaction, in the winter of 1881–82, Pulaski and Heard entered into a joint adventure, by which they agreed to get out, raft, and sell other timbers in partnership. Pulaski was to superintend the getting out and rafting of the timbers, Heard was to make advances in provisions and to pay for labor, and after paying all expenses attending the adventure, the net profits or losses were to be borne equally by the two co-partners. Work was commenced, and continued for several months. The testimony tends to show that Heard commenced making advances for the joint adventure in January, 1882, and that he continued to do so into the summer. This adventure was closed up about the winter of 1882–83, and resulted in a serious loss. Before March 6, 1882, when Heard received the five hundred and twenty 70-100 dollars, he claims to have expended considerable sums of money on account of the partnership; and that Pulaski being bound to make good to him one-half of the losses of the partnership, this would swell the indebtedness of Pulaski to him on March 6, 1882, by one-half the sum thus expended. Adding this to the five hundred dollars admitted by

Pulaski to be due to him (including the land note), he claims that a much larger sum was due him on March 6, 1882, than the proceeds of the timber, paid to him on that day.

The timber gotten out in the partnership enterprise was not sold until in the fall or winter of 1882–83. Till then the mutual liabilities of the partners, one to the other, had not matured into a debt or legal liability; and it could not do so until the adventure was completed, and the profit or loss ascertained. We agree with the chancellor, that on March 6, 1882, no debt had arisen from Pulaski to Heard on the partnership account, which would authorize the latter to apply any part of the five hundred and twenty 70-100 dollars to its extinguishment, without the consent of Pulaski.

Before the present bill was filed, Pulaski had instituted suit against Heard, alleging that he had made full payment for the land, and that Heard had refused to make him title—thus committing a breach of his bond. The issue in the cause was whether or not full payment had been made. There were verdict and judgment for defendant, which remain in full force. This was, and is, a conclusive determination that some part of the purchase-money of the land was unpaid. It is no determination of the amount that was unpaid. If the report of the register ascertains that nothing was due on the lands, he must still report that a nominal sum was due. Unlike a single judgment in an action of ejectment (*Boyle v. Wallace*, in MS. Ala.), the judgment in the suit on the bond is conclusive between these parties that something was due.—2 Brick. Dig. 145, § 205.

We have not inquired whether the decree in this case was final.

There is no error in the record of which appellants can complain.

Affirmed.