# Kent & Barnett v. Marks & Gayle.

*Bill in Equity to set aside the Cancellation of a Mortgage, and to foreclose it.*

1. *Application of a payment on a debt; right of creditor in absence of specific direction.*—A debtor may, at the time of payment, direct its application; but if, at the time of payment, he is indebted to the same creditor in two separate accounts, and fails to give any direction as to how the said payment shall be applied, the creditor has the right to apply it to either one of his debts; and when so applied, at the time of payment, both parties are bound by such application, which can not be changed except by mutual consent.

2. *Burden of proving specific direction.*—The burden of proving an alleged specific direction as to the application of a payment upon a debt to a creditor, is upon the debtor who affirms such special direction.

3. *Cancellation of mortgage by mistake; application of a payment.*—Defendants owed complainants on a mortgage and on an open account, and, a payment having been made by defendants, the mortgage was surrendered, as complainants alleged, through a mistaken impression of one of their employés that the mortgage debt had been paid. Defendants testified that they called for a statement of their "mortgage account," and complainants' bookkeeper testified that they called only for a statement of their open account, which he furnished. There was no such account on complainants' books as a "mortgage account," and the amount paid by defendants was the exact amount of the open account. Defendants knew that the money paid by them was less than

[Kent & Barnett v. Marks & Gayle.]

the mortgage debt. Complainants produced in evidence the statement of the open account which they claimed to have furnished, while defendants failed to produce the statement of the "mortgage account," which they alleged was furnished them. *Held,* that the payment was on the open account, and that the mortgage was surrendered by mistake.

APPEAL from the City Court of Montgomery, in Equity.

Heard before the Hon. THOS. M. ARRINGTON.

The bill in this case was filed by the appellees, Marks & Gayle, against the appellants, Kent & Barnett, on November 7, 1891; and sought to have annulled and set aside the cancellation of a certain mortgage, given by respondents to the plaintiffs, and then to have the said mortgage foreclosed. The facts of the case are sufficiently stated in the opinion. Upon the final submission of the cause, on the pleadings and proof, the chancellor granted the relief prayed for. The defendants appeal, and assign as error this decree of the chancellor.

JOHN GINDRAT WINTER, for appellants.—(1.) The debtor has the right to direct the application of payment if made at the time of payment.—*McCurdy v. Middleton,* 82 Ala. 137, 2 So. Rep. 721. (2.) A mistake to justify the annulling of the cancellation of a mortgage must be mutual.—*Porter v. Collins,* 90 Ala. 510; 8 So. Rep. 80. (3.) Courts of equity will not interfere unless the mistake is shown by clear and satisfactory proof; or unless a demand and refusal to correct is alleged and proven.—*Alexander v. Caldwell,* 55 Ala. 517; *Campbell v. Hatchett,* 55 Ala. 548; *Berry v. Sowell,* 72 Ala. 14; *Berry v. Webb,* 77 Ala. 507; *Guilmartin v. Urquhart,* 82 Ala. 570, 1 So. Rep. 897; *Harold v. Weaver,* 72 Ala. 373; 1 Brick. Dig. 681, § 611.

T. SCOTT SAYRE, *contra.*—The application of a payment by the respondents to the open account having been made at the time of payment, without objection on the part of respondents, is binding; and the burden of proving the specific direction is upon the debtor making the payment.—*Levystein v. Whitman,* 59 Ala. 345.

HARALSON, J.—The primary object of the bill in this case is the foreclosure of a mortgage given on real

estate by appellants, who were defendants in the lower court, to appellees, the complainants there, to secure a note of the defendants to the complainants, for $508.88.

This note and mortgage were due and unpaid, on the 2d February, 1891. The defendants were also indebted to complainants, on that date, for a balance on open accounts, in the sum of $432.43. On that day, defendants paid to complainants the sum of $432.43, the amount due and owing by them on their open account; and one of the employés of complainant, under the mistaken impression, as is averred, that it was the mortgage debt that had been satisfied, delivered to defendants the mortgage, but did not deliver to them the note, secured by it, which note, it is alleged, was lost or mislaid.

The appellants claim, that they paid their mortgage, and not the balance on their open account, and there is, therefore, no mortgage debt due, and no mortgage to foreclose, whereas, the complainants in the suit allege, it was the balance of the account that was paid, and the mortgage is still alive, unaffected by its delivery, through mistake to the defendants. There is no dispute as to the amount that was paid on the 2d of February, 1891, but the sole contention between the litigants is one of the application of the payment, whether to the mortgage or open account debt.

The prayer of the bill is to have the surrender and cancellation of said mortgage set aside, and for a foreclosure of the same. The chancellor granted the relief prayed, and this appeal is to reverse that decree.

The case is not one, nor is it similar to one, for the reformation of a written instrument for an alleged mistake in its execution, and the authorities referred to and the argument submitted by counsel in reference to such a case as analogous to this, are without application. The question here, as stated, is one purely of fact, as to the application of the payment of the money made by defendants to complainants. If the money was paid on the open account, and to close it up, and the mortgage was delivered up by mistake, when nothing had been paid on it, then its delivery to defendants did not affect it at all, and it remained in their hands, though marked cancelled by complainants, just as valid and of as much force and effect, as if it had remained in complainants hands. Defendants, in such case, would be held to be the depositaries of it, in trust for complainants.

[Kent & Barnett v. Marks & Gayle.]

Let us enquire, then, about this payment. It must be admitted, that at the time of payment, the defendants had the right to direct its application; but, if they failed to give any directions as to how it should be applied, the complainants had the right to apply it to either one of their debts, and if they did apply it, at the time, to their open account debt, both parties are bound by it. The burden of proving an alleged specific direction, as to the application of a payment, is upon the debtor. *Levystein v. Whitman*, 59 Ala. 345.

McD. Cain testified, that he was in charge of the books of complainant, temporarily, from the 26th of January, to the 4th of February, 1891, in the absence of Mr. Boyd, the regular bookkeeper; that defendants came in, on the 2d of February, and asked for a statement of the account of Kent & Barnett, and each asked, also, for a statement of his personal account; that he, accordingly. furnished to them a statement of the open account of Kent & Barnett with complainants, and the account of T. R. Kent with them, and there being only two items on the account of R. A. Barnett, one, an item of debit, and the other, of credit, he furnished no written statement to him, but told him the balance that was to his credit. The witness attaches to his deposition, a copy of the account he rendered to defendants, which is headed, ".Messrs. Kent & Barnett. In account with Messrs. Marks & Gayle." That account aggregated, on the debit side, $3,645.46, composed altogether of cash items, advanced at different times to them, and on the credit side, to $3,213.03, the proceeds of 70 bales of cotton, except $100, a cash payment on the 22d of January, 1891, leaving a balance of $432.43 due by them to complainants, on the 2d of February, on open account; and no reference to any mortgage indebtedness is found in the statement. He further testifies, that defendants settled with him by that statement of account, and paid that balance by drawing, each, a check on complainants, for the amount he had with them to his individual credit, and by paying him the balance, thereafter, of $88.84, in cash; that the checks drawn, respectively, by Kent and Barnett, were credited to their individual accounts, balancing them, and the amounts they paid, in their checks, and their cash payment, exactly aggregating the $432.43, was credited to defendants in their

[Kent & Barnett v. Marks & Gayle.]

said open account with complainants, to balance and settle the same in full; that they had the statement furnished to them, at the time they paid the balance of the account as shown; and there was no account of theirs of the mortgage transaction on the books of complainant.

W. M. Marks testified, that on the 2d February, he was cashier and general utility man of complainants, and remembered the transaction with defendants on that day; that nothing was said to him about their indebtedness to complainants, except that he was told, they had settled it and wanted their mortgage, and he did not remember whether this was told him by one of them or by some one in the office; that he did not investigate to see whether they had settled or not, but believing they had paid the mortgage and account, he surrendered the mortgage to them; that, as a matter of fact, defendants had not paid said note and mortgage; and, a few days afterwards, Mr. Boyd, the book-keeper, called his attention to that fact; that he afterwards saw defendants, and they acknowledged, that their mortgage debt was not paid, and stated that they were unable to pay the same then, but would make a new mortgage, any way complainants desired it; that complainants drew up another mortgage, giving them additional time for the payment of the amount claimed, and on May the 2d, complainants received a letter from defendants, in the handwriting of T. R. Kent, in which they said they had not signed the mortgage, and requesting them to fill out one for $481.58, with instructions, and send to them, and they would sign—concluding with an apology for not attending to the matter sooner.

Another witness, W. A. Gayle, corroborates the witness Marks, as to these conversations with defendants testified to by him, and of their having promised to make a new mortgage for the old one, which they acknowledged had not been paid, and states, that the defendants came to Montgomery for the purpose of giving such a mortgage, but complainants desired their wives to join with them in its execution, and on that account it was not done, but they departed with the agreement, if complainants would send a Notary Public to their houses with the mortgage, they and their wives would execute it; and they requested this, to save their wives a trip to Montgomery.

The defendants each testified in substance, that they went together, on the 2d February, to the office of complainants, and called for the balance on their mortgage account, and paid it, and the mortgage was delivered to them; that there was no statement of the account of Kent & Barnett with complainants rendered to them, at the time, but the balance due on the mortgage account was handed to them. They deny the conversations deposed to by witnesses, Gayle and Marks, for complainants, as to their acknowledging, that they had not paid the old mortgage, and agreeing to give another, but they say that they did promise to give a mortgage, if they found they owed anything, and the promise to do so was sometime after their first conversation with Gayle.

Kent states that he wrote the letter referred to to the complainants, but he gives no explanation of it, and Barnett states, that he knows nothing about it, and both say, the money was paid to be applied to "the mortgage account," as they repeatedly style the account, for which they called, and which they say they paid.

It will be thus seen, that the evidence for the parties, is in material conflict, reconcilable alone, as we prefer to consider it, on the score of the infirmity of human memory, when stimulated by self interest, and a desire which is very natural,—if it is not always commendable,—to succeed in the struggles of a law-suit. Here, as is generally the case, some foot prints have been left, which lead to a satisfactory solution of the vexing question between the parties, as to which their statements are at such variance.

Cain testified, that defendants, when they called asked for a "*statement of the account of Kent & Barnett*," and defendants say, they asked for the statement of their "*mortgage account*." Cain testified further, that he furnished them a statement of their account,—and not a statement of what was due on the mortgage,—showing, that they owed the complainants a balance of $432.43 on open account; that they also called for their individual accounts; and he furnished them, showing that Kent had to his credit $314.19, and Barnett to his, $29.40, which balances they drew checks against to pay on the account rendered, which two sums, with $88.84, which they paid in cash, exactly equalled the balance of $432.43 and satisfied that open account. The defendants say

they paid the mortgage account, and not the open account. Now, it appears, there was no such account on the books of complainants, as "the mortgage account," and it was unnecessary to have been there, as the mortgage and note, on which nothing is shown to have been paid, were a stated account, always of what was due, except the interest, and if any payments had been made on the note, they should, properly, have appeared endorsed thereon. Again, defendants paid the exact amount of the balance due on the open account, and not the amount due on the note and mortgage. They knew they had an open, unsecured, current open account with complainants, and they knew, that the amount of their mortgage indebtedness was $508.88, with interest from Jany. 1, 1891, an amount larger than the sum they were paying. It was a fact, we must hold, they knew with absolute certainty, that $432.43,—the amount they paid,—was not equal to their mortgage debt, and, therefore, could not pay it. It is true Kent testifies that he paid $100 on the mortgage, in January; but that credit was applied to the open account, which was rendered to the defendants by Cain, and not disputed, leaving a balance of $432,43, which they settled in the manner shown. If credited to the mortgage, and added to the indebtedness on the other account, the mortgage would have been $408,88, and the balance, on open account, $532.43 both making $941.31, the same amount they owed on the day they paid the balance on open account; and yet they denied, after paying that sum, that they owed any thing more to complainants, either on open account or mortgage. Their memories are at fault. Besides, defendants say they called for their individual accounts, in addition to the mortgage account, and all three were furnished, Barnett being told, simply, what was due on his $29.40. Kent attaches to his deposition his individual account, which Cain says he furnished him, showing a balance due him of $314.19, but, he does not attach the "mortgage account," which he and Barnett both testify Cain furnished. Certainly, then, an account of Kent & Barnett was furnished by Cain. Both sides agree as to that, and they both agree, in the further fact, that $432.43 was the balance of the account rendered, and the sum that was paid by defendants to settle the account, whatever it may have been. Cain attaches to his deposition, a

[Kent & Barnett v. Marks & Gayle.]

copy of the account he swears he rendered, showing the balance defendants paid. Why did not defendants or one of them, attach to their deposition, the mortgage account which they say Cain furnished? What became of that account? If it had been the mortgage account that was rendered, as they say it was, and it showed a balance of $432.43, which they admit they paid, and it had been produced, it would have been decisive of this case in their favor, for it would have shown that their recollection of the account rendered, and the amount due on it, was correct, and Cain's incorrect. We are not permitted to doubt, therefore, that the reason they did not attach "the mortgage account" to their depositions is, that they were mistaken, and no such account was in their hands, or ever had been. In this connection, too, a fact of very significant importance may be mentioned,—that after paying the $432.43, the amount of their open account, the defendants, when Marks went to see them, and reminded them that the mortgage had been delivered up by mistake, told him, as they depose, that they had paid all they owed him, and were unwilling to admit that they owed him anything, and yet the evidence satisfactorily shows, they owed $941.31 without interest, $432,43 of which, only, they had paid. Their memories were not very accurate therefore. Another circumstance shows that their memories were uncertain. Denying when approached, as they say, that they owed anything, or had commited any mistake, Kent eventually became convinced they were mistaken as to having paid the balance due on the open account and agreed to give a new mortgage to secure it, and Barnett does not deny owing the balance of the unsecured account. On the 2d of May, Kent, as has been shown, in the name of Kent & Barnett, wrote to complainants agreeing to execute a new mortgage, if they would send one down by their young man, with instructions, and apologizing for not having attended to the matter sooner.

Our finding, after a careful consideration, is that the mortgage debt has never been paid; that defendants are mistaken in so supposing; that the mortgage was surrenpered by mistake, and that the decree of the court below is free from error.

Affirmed.